IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL D. MICHAEL, as the Administrator of
the Estate of Jack D. Michael, and
JUDITH D. KUHN, as the Administratrix for the
Estate of Paul F. Henderson, et al.,

    Plaintiffs,

v.                                                               Civil Action No. 1:14-cv-212
                                                              Judge Irene M. Keeley

THE ESTATE OF ALEX KOVARBASICH,
by and through ALBERT F. MARANO,
SHERIFF OF HARRISON COUNTY,
as Administrator for the Estate of Alex
Kovarbasich and
CONSOLIDATION COAL COMPANY,
a Delaware Corporation,

    Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

Defendant, Consolidation Coal Company ("CCC") filed its Motion to Strike Plaintiffs' Motion to Amend the Complaint or, Alternatively, the Affidavit and Other Testimony of Lawrence Leroy Layne on August 12, 2015 (Docket No. 68). Plaintiffs' response was filed August 26, 2015 (Docket No.81). Defendant CCC's reply was filed September 2, 2015 (Docket No. 87). Pursuant to this Court's order dated August 20, 2015 (Docket No. 72), the parties appeared on September 10, 2015, to present evidence and oral argument. During the hearing the Court heard counsel (5) for Plaintiffs *in camera*. This matter is before the Magistrate Judge (Court) by order of reference dated August 13, 2015 (Docket No. 67). The pending motion is non-dispositive within the meaning of 28 U.S.C. §636(b)(1)(A).

### I.
### Relevant History

Seventy-eight (78) coal miners died when the Consol No. 9 mine, located near Farmington, Marion County, West Virginia, exploded and caught fire on November 20, 1968.

Prior to the explosion and fire, methane gas concentration in the No. 9 mine from mining operations was controlled by four (4) large surface ventilating fans. The No. 1 fan was located at

the slope. The No. 2 fan was located at Athas Run near the 2 North area of the mine. The No. 3 fan was located at Mod's Run near the 4 North area of the mine. The No. 4 fan was located at Llewellyn near the 7 South area of the mine. The fans were monitored by the FEMCO brand safety system. The FEMCO system was designed to set off an alarm in the lamp house signaling that the fan it monitored had either slowed down or stopped. The alarm triggered notification to the miners underground and, if the fan was down for more than twelve minutes, the shutting down of electricity to the mine and evacuation of the miners from the mine.

Following the mine explosion and fire, investigations were conducted. Lawrence Leroy Layne ("Layne") was a mine inspector with the United States Department of Labor's ("DOL"), United States Department of Interior (DOI), or Mine Safety and Health Administration ("MSHA"). Layne worked in the area of the No. 9 mine when efforts were made in September 1970 to re-energize the substation that powered the Mod's Run fan. According to Layne's contemporaneous handwritten memorandum, an electrician told Layne that he saw evidence of bridging or jumping the FEMCO alarm system. Layne withheld the identity of the electrician at the electrician's request.

A MSHA investigation report concluded, in part, in March 1990, that "the ventilation along the Main West headings was inadequate overall, and most probably non-existent in some areas between 1 South and 4 North. On the day before the explosion . . . methane accumulated to about four percent on the right side of the 7 South section for a distance of approximately 1,000 feet out by the working section because of inadequate ventilation and the lack of sufficient ventilation controls . . ." and the "FEMCO Supervisory Control (fan monitoring and mine power cutoff system) was not operating properly at the time the explosion occurred, as mining operations continued at the face after the explosion" (Docket No. 64-1, pp. 37 and 38). It further reported "only one fan was down and that the monitoring system on the other fan was blocked out, but the fan was actually operating" (Docket No. 67, p. 3). Because of the extensive damage and the ultimate sealing of the mine, some of the remains of miners killed were not recovered. The twenty (20) year investigation did not identify the point of ignition or the cause of the ignition of the explosions and fires. The

report did point to a number of contributing factors.

Plaintiffs filed their original complaint against the estate of Alex Kovarbasich by and through Albert F. Marano, Sheriff of Harrison County, as administrator for the estate of Alex Kovarbasich,[1] and CCC in the Circuit Court of Marion County, West Virginia. Plaintiffs allege: 1) because Plaintiffs did not discover, until June 9, 2014, that Alex Kovarbasich, an employee of CCC or its subsidiary, allegedly rendered the FEMCO alarm system related to the Mod's Run fan inoperable before the explosion and, thereafter, failed to disclose the same to Plaintiffs or the investigators, Plaintiffs are not time barred from maintaining the action; 2) that all of the beneficiaries of the estates of the seventy-eight (78) deceased coal miners are entitled to class action status as plaintiffs; and 3) based on the alleged fraudulent concealment and alleged resulting deprivation of rights to sue, Plaintiffs are entitled to wrongful death damages in the amount of $110,000.00 per class member for the wrongful death of each deceased coal miner in accord with West Virginia Code Chapter 55, Article 7, Section 6 (1967), pre-judgment and post judgment interest on their award, and punitive damages (Docket No. 1-19).

Defendant CCC removed the case to federal court (Docket No. 1).

During the pendency of the action in this Court, Plaintiffs sought to take the deposition of Leonard Sacchetti ("Sacchetti"), a non- party, in order to preserve his testimony (Docket No. 22). Plaintiffs believed Sacchetti would be able to verify that it was Kovarbasich who rendered the FEMCO alarm system inoperable. Sacchetti's deposition was taken March 26, 2015 pursuant to the Court's limiting order dated March 16, 2015 (Docket No. 45). Sacchetti did not identify Kovarbasich as the person who rendered the FEMCO alarm system inoperable before the explosion.

On April 3, 2015 five (5) lawyer representing Plaintiffs talked to Layne in Birmingham, Alabama (Tr. P. 22, 16-18). Layne told the lawyer that the electrician he talked to in 1970 was Leonard Sacchetti. He also told the lawyer that Sacchetti told him in September 1970 that it was Sacchetti and Kovarbasich that jumped the FEMCO alarm system at Mod's Run. Based on that

---

[1] The legal propriety of the appointment of Albert F. Marano, Sheriff of Harrison County, as administrator of the Estate of Alex Kovarbasich is disputed and pending appeal.

conversation, on April 6, 2015, Plaintiffs filed a motion seeking an order permitting them to conduct an expedited deposition to preserve the testimony of Layne (Docket No. 51). The Court conducted a hearing on April 8, 2015. During the hearing Plaintiffs' counsel alluded to what Layne had said on April 3, 2015 as part of the basis for the expedited deposition. By order dated April 10, 2015 (Docket No. 57) the Court denied Plaintiffs the right to expedite the taking of Layne's deposition. Instead, the Court permitted serving Layne with a subpoena *ad testificandum* for a day certain more than one-hundred eighty (180) days after April 10, 2015 in order to: 1) provide them with time to comply with federal regulations pertaining to the taking of testimony of a former government employee, and 2) to give Defendants the opportunity to engage in specific and limited discovery in anticipation of the taking of Layne's deposition.

During the April 3, 2015 meeting, during a round table type discussion with the five attorneys, Layne represented that he wrote the memorandum of September 19, 1970 with the hope that it would cause his superiors to raise questions. Layne represented that he lost track of the investigation because he was transferred out of the area to work on mine safety legislation. Layne did say that in 2010 he returned to the area and spoke with Sacchetti about their 1970 conversation and that Sacchetti made statements that he (Layne) took as threats.

Plaintiffs' lawyers prepared a draft affidavit between August 15 and August 27, 2015. They did not seek authorization from the DOL, DOI or MSHA under 29 C.F.R. §2.20 *et seq* or from the Court for their interviews with Layne.

Plaintiffs counsel placed a telephone call to Layne on April 26, 2015 to confirm his willingness to sign the affidavit.

The next day, April 27, 2015 Plaintiffs' counsel mailed the affidavit to Layne in Alabama. Layne signed the affidavit before a notary public on April 30, 2015. No Plaintiffs' lawyers were present at Layne's signing of the affidavit. The signed affidavit was then returned to Plaintiffs' lawyers.

There is no evidence that Layne talked with the DOL, DOI, MSHA or anyone else about his duties under 29 C.F.R. §2.20 *et seq.*

No discovery in accord with the Court's April 10, 2015 Order was propounded by Defendants or Plaintiffs between April 8, 2015 and April 30, 2015.

Layne retired in 1992. In his affidavit Layne reaffirms that, in his capacity as a mine inspector for MSHA, he authored the September 15, 1970 hand written memorandum which reads:

> On Sept.___, 1970, _____ Mod's Run substation was energized for the first time since the explosion of Nov. 27, 1968. The electrician (name withheld by request) reported that while re-energizing the substation he found evidence to indicate that the FEMCO fan alarm system for Mod's Run fan had been rendered inoperable before the explosion. The fan alarm system had been bridged with jumper wires; therefore, when the fan would stop or slow down, there was no way of anyone knowing about it because the alarm signal was bypassed. This information was reported to me Sept 15, 1970.

In his affidavit Layne also reaffirms that he withheld the electrician's name on request by the electrician. As previously noted, in his affidavit for the first time Layne avers the electrician was Sacchetti. Layne also avers that Sacchetti told him that he (Sacchetti) and Kovarbasich disconnected the FEMCO alarm on the Mod's Run fan before the November 20, 1968 explosion and it was Layne's understanding it was done at the direction of CCC. Layne also admits in his affidavit that: "[p]rior to April 3, 2015, I never told anyone that Mr. Sacchetti told me on September 15, 1970, that he and Alex Kovarbasich disconnected the FEMCO alarm on the Mod's Run fan before the November 20, 1968, explosion" (Docket No. 64-7, p. 2, pp. 9).

## II.
## Contentions

Defendant CCC contends:

1. Plaintiffs' obtaining Layne's affidavit is a violation of the Court's order of April 10, 2015, and that the Court should sanction Plaintiffs under F.R.Civ.P. 37(b)(2)(A)(i) and (iii).

2. Plaintiff obtained Layne's affidavit in violation of 29 C.F.R. §2.20 *et seq.*, and it should, therefore, be stricken.

Plaintiffs contend:

1. Their talking to Layne and obtaining his affidavit was not a violation of the Courts order of April 10, 2015.

2. Their talking to Layne and obtaining his affidavit was not prohibited by 29 C.F.R. §2,20 *et seq.*

# III.
# Discussion

## A. Violation of the Court's Order of April 10, 2015

This Court's order dated April 10, 2015 provided in pertinent part: A) "Given these reasons, the Court concludes that good cause does not exist for granting Plaintiffs' request for an **expedited deposition**"; B) "Defendants must have a reasonable amount of time to conduct discovery concerning the likely subjects attendant to any **deposition of Layne**"; C) "Accordingly, for the reasons stated herein, the parties may engage in the following **limited discovery,**

> 1. Plaintiffs may serve **notice of deposition and serve a subpoena *ad testificandum*** on Layne for a day certain more than 180 days after the entry date of this Order thereby giving Plaintiffs the opportunity to initiate any process required under 29 C.F.R. §§2.20 *et seq.*
>
> 2. Defendants may conduct discovery from Plaintiffs and Plaintiffs may conduct discovery from Defendants relative to the following general topics: facts and records surrounding the creation of the Layne memo of September 1970; the storage and discovery of the same by Plaintiffs or someone on their behalf; the relationship of Layne to any of the Plaintiffs, any of the Defendants, Alex Kovarbasich, Leonard Sacchetti, or counsel representing same at any time before or since the 1968 mine explosion and disaster; identities of all persons and entities who had access to or possession of the Layne memo its creation on or about September 15-18, 1970, until its disclosure on April 6, 2015, when it was attached as Exhibit 1 to Docket No. 51; the facts, records, and photographs surrounding any inspections of the Mod's Run fan system and alarm systems immediately prior to and after the mine explosion and disaster of 1968; the facts, records, and photographs surrounding the control of the Mod's Run fan system and alarm systems immediately after the mine explosion and disaster of 1968 up to September 15-18, 1970; and the facts, records, and photographs surrounding the attempt to re-energize the electric to the Mod's Run fan system and alarm system on or about September 15 to 18, 1970. The Court finds that a period of 180 days from the date of entry this Order should be sufficient for the conduct of such discovery (emphasis added by the Court)"

(Docket No. 57).

In order for a Court to impose sanctions for violating its Order, the Court must first determine if there was a violation. Fed. R. Civ. P. 37.

No place in the Order of April 10, 2015 is Plaintiff prohibited from conducting investigation of witnesses, investigation of potential claims or investigation of additional defendants. The Court did not prohibit Plaintiffs from talking to Layne, interviewing Layne, or obtaining a statement, from

Layne.

The only thing that was prohibited by the Order was the taking of an expedited deposition of Layne. The focus of the Order was twofold: 1) to deny an expedited deposition of Layne; and 2) to provide for the possibility of a deposition of Layne at a later date after: a) Plaintiffs had time to try to comply with 29 C.F.R. §§2.20 *et seq.*; and b) after Defendants had been given time to conduct some discovery in order to be prepared for the taking of Layne's deposition.

Based on the contents of footnotes in the Order and the statements made by counsel during the hearing of April 8, 2015, the Court and Defendants were well aware that Layne had been interviewed by Plaintiffs' attorney or attorneys on Good Friday, April 3, 2015. The Court and Defendants were also well aware that, based on the interview, it was expected that Layne would point an accusatory finger at Sacchetti as having aided and abetted Kovarbasich to render the FEMCO warning system at Mod's Run inoperable prior to the mine explosion and fire. The Court and Defendants were well aware that, by doing pointing an accusatory finger at Sacchetti Plaintiffs would have another potential West Virginia Defendant to use in their attempt to defeat complete diversity and force a remand to state court (Docket No. 57, p.2, fn. 1 and p.4, fn. 2; Docket No. 58, p. 9-11). Every person in the hearing of April 8, 2015 knew or should have known that it was Plaintiffs' objective to get a statement from Layne to use under F.R.Civ.P. 11(b)(3) as 1) support for a direct claim against Sacchetti and 2) to thereby defeat federal diversity jurisdiction without having to wait for a decision on the pending appeal of the propriety of the appointment of the Sheriff of Harrison County as Administrator of the Estate of Alex Kovarbasich. .

Even if the Court's Order was broad enough to cover sworn affidavits, which it is not, the Court cannot find that Plaintiffs acted in bad faith. Anderson v. Found. for Advancement, 155 F.3d 500, 504 (4th Cir. 1998).

**B.** **Violation of 29 C.F.R. §2.20**

29 C.F.R. § 2.20 (a) provides:

> procedures to be followed whenever a subpoena, order or other demand (hereinafter referred to as a demand of a court or other authority, in connection with a proceeding to which the U.S. Department of Labor is not a party), is issued for the production or

> disclosure of . . . (3) any information or material acquired by any person while such person was an employee of the Department as a part of the performance of his official duties or because of his official status.

29 C.F.R. § 2.20.

29 C.F.R. § 2.21 provides as follows:

> [w]henever an employee or former employee of the Department receives a demand for the production of material or the disclosure of information described in §2.20(a), he shall immediately notify the appropriate Office of the Solicitor. The appropriate Office of the Solicitor shall be furnished by the party causing the subpoena to be issued with a written summary of the information sought and its relevance to the proceeding in connection with it was served. The Associate Solicitor, Regional Solicitor, or Associate Regional Solicitor, whichever is appropriate, may waive the requirement that a written summary be furnished where he or she deems it to be unnecessary. The election to waive the requirement of a written summary in no way constitutes a waiver of any other requirement set forth in this subpart.

29 C.F.R. § 2.21.

CCC argues 29 C.F.R.§2.20 *et seq.* carries the force and effect of law that all litigants are required to follow when seeking agency information. In support, CCC points to the Cox v. United Bhd. of Carpenters & Joiners of Am., AFL-CIO, 1993 WL 244963, at *1 (D. Kan. May 27, 1993) and Smith v. C.R.C. Builders Co., 626 F. Supp. 12 (D. Colo. 1983).

Smith involved a state wrongful death action wherein plaintiff sought to subpoena the contents of Occupational Safety and Health Association ("OSHA") investigative file compiled relative to Plaintiff's decedent's death. Smith, 626 F. Supp. 13. OSHA's area office supervisor, pursuant to 29 C.F.R. § 2.22 (1983) and at the direction of the Deputy Solicitor of Regional Operations, refused to honor the subpoena. Id. The state court judge ordered the OSHA supervisor to comply or face contempt. Id. The OSHA supervisor removed the contempt proceeding to federal court pursuant to 28 U.S.C. §1441 and 1442(a). Id. In reaching the decision to quash the subpoena, the Court held: "Section 2.22 does not create an exemption from discovery under the Freedom of Information Act. Nor does it 'preempt' the provisions of Rule 45 of the Colorado Rules of Civil Procedure. Section 2.22 simply regulates the manner in which discovery requests made on DOL employees are handled to ensure more consistent treatment. Litigants, whether they are in state or

federal court, are bound to follow the procedure contemplated by section 2.22 in seeking DOL documents. They may not subpoena DOL employees without the approval of the employee's superiors." Id. at 15.

Cox involved an appeal of a magistrate judge's decision overruling the United States' motion to quash a subpoena commanding a special agent of the DOL to provide "all documents, including telephone messages, correspondence, memoranda, reports and tape recordings, referring or relating to" Cox and others or the United Brotherhood of Carpenters and Joiners of America. Cox, 1993 WL 244963, at *1 The inspector general of the DOL instructed the special agent not to provide the documents or testimony in response to the subpoena. Id. Relying on Smith, the district judge overruled the magistrate judge and quashed the subpoena *duces tecum*. Id. at 2.

Section 2.21 clearly places the obligation on Layne as the former employee of the Department of Labor to notify the Office of the Solicitor of any demand for information that would meet the definition of Section 2.20(a).

The instant case is factually distinguishable from Smith and Cox. No subpoena or other formal court process was involved in Plaintiffs' interviewing Layne or obtaining Layne's affidavit. There is no evidence to suggest that Layne sought or received the blessing of the Office of the Solicitor prior to his original interview with Plaintiffs' counsel or prior to his signing the affidavit prepared by Plaintiffs' counsel. There is no evidence to suggest Layne was an unwilling participant in the giving of his affidavit.

Next, CCC argues that, in the absence of prior authorization from the appropriate Deputy Solicitor of Labor, Layne, as a former DOL employee, should not have provided information to Plaintiffs that he had acquired during the course of his official duties; that his affidavit is the same kind of sworn testimony as deposition testimony; and the information Layne swears to in his affidavit was clearly information he garnered during his work as an MSHA employee and, therefor, subject to the protections provided under 29 C.F.R. §2.20.

Notwithstanding the correctness of those arguments, Layne provided the information voluntarily and free of any court imposed process. Not one of the cases CCC points to: Ferto v.

Fielder, 2010 WL 3168293 (N.D. Ill. 2010), or Lupardus v. U.S. Dept. of Labor, 2007 WL 2156606, (S.D.W.Va. 2007), suggests, much less holds, that this Court has authority to quash Layne's affidavit. To the contrary, the court in Ferto found it had no more jurisdiction than the state court to force the DOL employee to testify in the state civil case and that the proper procedure was to file for relief under the Administrative Procedures Act. Ferto, 2010 WL 3168293 at 3. Similarly, District Judge Goodwin of the U.S. District Court for the Southern District of West Virginia in Lupardus, on review of the administrative record, held that the Agency's (MSHA), application of the balancing test in denying testimony by its employee in a civil wrongful death case was not arbitrary or capricious. Lupardus, 2007 WL 2156606 at 3.

## IV.
## ORDER

For the reasons stated herein the portion of Docket No. 68, to wit: Defendants' Motion to Strike the Affidavit and Other Testimony of Lawrence Leroy Layne is **DENIED**. The remaining portion of Docket No. 68, to wit: Motion to Strike Plaintiffs' Motion to Amend the Complaint, seeks the same relief as set forth in Defendant Consolidation Coal Company's Memorandum In Opposition To Plaintiffs' Motion To Amend Complaint (Docket No. 67) as joined in by Defendant Albert F. Marano, Sheriff Of Harrison County (Docket No. 70) and, therefore that portion of the relief sought in Docket No 68 is hereby **MERGED** with the Court's decision being rendered in Docket Nos 64, 67 and 70.

This order hereby **AMENDS** and supersedes the Court's previous order, filed on September 14, 2015 (Docket No. 91).

The Clerk of this Court is directed to 1) provide electronic notice of filing of this Memorandum Opinion and Order to all counsel of record.

It is so **ORDERED**.

Dated: September 23, 2015

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE