1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL D. MICHAEL, et al,

        Plaintiffs,

   vs.               CIVIL ACTION NUMBER 1:14CV212

THE ESTATE OF ALEX
KOVARBASICH, et al,

        Defendants.

- - -

Proceedings had in the <u>Telephonic Status Conference</u> of

the above styled action on <u>October 5, 2015</u>, at 1:00 p.m.,

before The Honorable Irene M. Keeley, Judge, at Clarksburg,

West Virginia.

APPEARANCES:  (Via Telephone)

FOR THE PLAINTIFFS:    SCOTT S. SEGAL, ESQUIRE
                     SAMUEL A. HRKO, ESQUIRE
                     810 Kanawha Boulevard, E.
                     Charleston, West Virginia   25301
                     304-344-9100

                     MARK A. BARNEY, ESQUIRE
                     Bucci Bailey & Javins LC
                     P.O. Box 3712
                     213 Hale Street
                     Charleston, West Virginia   25301
                     304-345-0346

Proceedings recorded by stenomask, transcript produced by
official court reporter.

**LINDA L. BACHMAN, CCR, CVR-M, OFFICIAL COURT REPORTER**
**P.O. BOX 969, CLARKSBURG, WEST VIRGINIA   26302-0969**
**304-282-0395**

2

APPEARANCES:  (Via Telephone) (Continued)

FOR THE PLAINTIFFS:          C. PAUL ESTEP, ESQUIRE
                             STEVEN L. SHAFFER, ESQUIRE
                             Estep & Shaffer LC
                             212 W. Main Street
                             Kingwood, West Virginia   26537
                             304-329-6003


FOR THE DEFENDANTS:
  (Kovarbasich Estate)       PETER G. ZURBUCH, ESQUIRE
                             Busch, Zurbuch & Thompson, PLLC
                             P.O. Box 1819
                             Elkins, West Virginia   26241
                             304-636-3560


  (Consolidation Coal)       WILLIAM E. ROBINSON, ESQUIRE
                             Dinsmore & Shohl LLP
                             P.O. Box 11887
                             Charleston, West Virginia   25339
                             304-357-0900

                             MICHAEL J. MOORE, ESQUIRE
                             Dinsmore & Shohl LLP
                             215 Don Knotts Boulevard
                             Suite 310
                             Morgantown, West Virginia   26501
                             304-296-1100

                             JOHN E. JEVICKY, ESQUIRE
                             Dinsmore & Shohl, LLP
                             1900 Chemed Center
                             255 E. Fifth Street
                             Cincinnati, Ohio   45202
                             513-977-8200

**I N D E X**

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|-----------|--------|-------|----------|---------|

(No Witnesses Called)

4

1                  P R O C E E D I N G S
2         (10-05-2015, 1:00 o'clock p.m., via telephone)
3              THE COURT:  Good afternoon.  This is Judge Keeley.
4    Do I have everyone on the line?
5              MALE SPEAKER:  I believe so.
6              THE COURT:  All right.  Let me call the case.  This
7    is the case of Michael, et al versus the Estate of
8    Kovarbasich, et al, 1:14CV212.
9         Would counsel, beginning with the plaintiffs, please
10   note their appearance?
11             MR. SEGAL:  Scott Segal on behalf of the
12   plaintiffs, Your Honor.
13             THE COURT:  Okay.
14             MR. HRKO:  Sam Hrko on behalf of the plaintiffs,
15   Your Honor.
16             THE COURT:  Okay.
17             MR. BARNEY:  Mark Barney on behalf of the
18   plaintiffs.
19             MR. SHAFFER:  Steve Shaffer on behalf of the
20   plaintiffs.
21             MR. ESTEP:  Paul Estep on behalf of the plaintiffs.
22             MR. ZURBUCH:  Pete Zurbuch on behalf of the
23   defendant Kovarbasich.
24             MR. ROBINSON:  Bill Robinson on behalf of defendant
25   Consolidation Coal Company.

1          MR. JEVICKY:  John Jevicky on behalf of defendant

2     Consolidation Coal Company.

3          MR. MOORE:  Michael Moore on behalf of defendant

4     Consolidation Coal Company.

5          MR. WITT:  Jason Witt, in-house counsel for

6     defendant.

7          MR. NET:  Cody Net, in-house counsel for defendant.

8          THE COURT:  All right.  Mr. Witt and Mr. Net, I

9     assume that the defendant is Consolidation Coal Company.

10         MR. WITT:  Yes.

11         THE COURT:  All right.  Have either of you noted an

12    appearance in the record in this case?

13         MR. WITT:  No.

14         THE COURT:  All right.  So I assume you're

15    attending to listen in, not to participate?

16         MR. WITT:  That is correct.

17         THE COURT:  All right.  Thank you very much.  I

18    appreciate your letting me know that you're on the line and

19    I would go back and ask, of the plaintiffs' attorneys who is

20    leading for purposes of the discussion today?

21         MR. HRKO:  Sam Hrko, Your Honor.

22         THE COURT:  All right.  Thank you, Mr. Hrko.  And

23    who is leading for the defendant Consolidation Coal Company?

24         MR. ROBINSON:  Your Honor, this is Bill Robinson.

25    I will be.

6

1        THE COURT:  Okay.  Thank you.  As I see it, and

2    please tell me if you think I'm wrong about this, I believe

3    we're going to discuss two issues.  The first is whether a

4    further stay of proceedings is appropriate pending what I

5    understand to be the plaintiffs' appeal--intent to appeal

6    Judge Marks' ruling to the West Virginia Supreme Court and

7    then the second issue would be how to proceed with any

8    objections to the memorandum opinion and recommendation of

9    Magistrate Judge Kaull that came down last week, on the

10   29th.  Are those the issues that you have as well identified

11   or do you think there are further issues that I should note

12   for the docket here today?

13        MR. HRKO:  Your Honor--

14        MR. ROBINSON:  Your Honor--

15        MR. HRKO:  Go ahead, Bill.

16        THE COURT:  We'll start with--

17        MR. ROBINSON:  Okay.  If--

18        THE COURT:  Let's do Mr.--Mr. Hrko, Mr. Zurbuch and

19   Mr. Robinson, in that order.  That would be probably best.

20        MR. HRKO:  Okay.  Your Honor, Sam Hrko here.  We do

21   agree that those two issues are applicable.

22        The other issue that might be a subset of one of those

23   is how we proceed with pending discovery at the same time.

24        THE COURT:  Okay.

25        MR. ZURBUCH:  Your Honor, Pete Zurbuch.  I would

1    agree.

2          MR. ROBINSON:  Your Honor, Bill Robinson.  The only

3    other issue that we may want to discuss relates to your

4    recent order appointing Magistrate Judge Aloi to replace

5    Magistrate Judge Kaull in the case.  Judge Aloi has--while

6    he was sitting as a Circuit Judge in Marion County first

7    received this case when it was filed in state court and he

8    recused himself at that time due to conflict of interest.  I

9    believe he had one or more relatives who were killed in the

10   mine that is at the center of this case.

11         THE COURT:  Okay.

12         MR. ROBINSON:  We've not filed a motion to recuse

13   Judge Aloi but I just wanted to bring that to your

14   attention.  It may be something--

15         THE COURT:  All right.  I think what you're

16   referring to is the fact that upon Judge Kaull's retirement

17   and Judge Aloi becoming the--the new Magistrate Judge at

18   this point of holding court, the Clerk's Office

19   automatically referred all pending discovery disputes for

20   purposes of a standing order to him and I think it would

21   probably be appropriate if--in light of what you just told

22   me to go ahead and make that motion to him so that he can

23   take a look at that and then as he determines, I can take a

24   look at it.  Okay?

25         MR. ROBINSON:  All right.  I understand.

8

1          THE COURT:  I don't think it would be appropriate

2    for me just to tell Judge Aloi you can't do this because

3    they raised an oral complaint or an oral concern.  I would

4    rather that you just go ahead and note it in writing to him

5    and let him take appropriate action first.  If you have a

6    problem with what--you know, if he recuses himself,

7    obviously we'll appoint another Magistrate Judge to handle

8    any discovery disputes.  Okay?

9          MR. ROBINSON:  I will do that, Your Honor.  Thank

10   you.

11         THE COURT:  I was unaware of--I probably should be

12   aware but I was not aware or was--my recollection wasn't

13   refreshed that he recused himself in the state court case

14   but I can well understand why.  I believe he had family

15   members who were impacted.  In fact,  I believe he had

16   decedents in that--from that explosion, correct?

17         MR. ROBINSON:  That's my understanding; yes.

18         THE COURT:  Okay.  Fine.  So I think we can handle

19   the Judge Aloi situation that way and--

20         MR. ROBINSON:  Okay.

21         THE COURT:  And what I would like to do then is to

22   take up first, with Mr. Hrko I think starting it,

23   whether--what the status of any further proceedings in this

24   case should be given the--have you already filed your appeal

25   of Judge Marks' ruling or is that something you intend to be

1   doing?

2          MR. HRKO:  We--Your Honor, we have not yet filed

3   the appeal.  It's my understanding we have 30 days from the

4   date the order was entered to do so and--and we do intend to

5   follow through with that.

6          THE COURT:  Okay.  And by the way, I want to--you

7   know, tell you all I apologize for not knowing that Judge

8   Marks had entered that opinion on September 21st.  No one

9   forwarded that to me and I didn't--as a matter of course I

10  would not get rulings from the Circuit Court so--I guess

11  once I entered my order staying the case waiting for his

12  order, you all forwarded that to us, correct?

13         MR. HRKO:  Correct, Judge.  It kind of happened a

14  little crazy.  I don't think Consol and the other defendants

15  actually saw it before the Court entered the stay order but

16  I think plaintiffs' counsel did see it before you entered

17  the stay order so it just--the timing of it was kind of

18  confusing for everyone.

19         THE COURT:  Okay.  All right.  Well we can clear

20  that up today.  What is it that you're seeking to do and

21  what is it that you want me to do?

22         MR. HRKO:  Your Honor, we would ask that the Court

23  simply stay the proceedings until we run this--this issue to

24  its completion in front of the Supreme Court of Appeals of

25  West Virginia.

1          THE COURT:  Stay the whole case?

2          MR. HRKO:  Correct.

3          THE COURT:  All right.  So stay all proceedings

4   until this--this is run by and you have--see--now is this a

5   decision by Judge Marks that you think is immediately

6   appealable or are you seeking a--an interlocutory?  I assume

7   since he's removed it from the docket it's--it's--it's a

8   closed case for him, right?

9          MR. HRKO:  That would be my understanding, Your

10  Honor.

11          THE COURT:  Okay.  All right.  So stay everything

12  over here pending a decision by the State Supreme Court on

13  Judge Marks' ruling from September 21st, 2015.  Mr. Zurbuch,

14  does your client have a position on this?

15          MR. ZURBUCH:  No, Your Honor, really doesn't.  I

16  would say this that obviously if the case isn't stayed we'd

17  be following it up with a motion to dismiss, which I think

18  would likely have to be granted and I can understand the

19  plaintiffs' desire to stay it.  It does make some difference

20  to Kovarbasich in the event the Supreme Court would reverse

21  Marks.

22          THE COURT:  Yes, of course.  Okay.  What about

23  Consolidation Coal Company, Mr. Robinson?

24          MR. ROBINSON:  Your Honor, in view of Judge Marks

25  September 29 order which vacated the Harrison County

1    Commission's appointment of Sheriff Marano as Administrator

2    of the Kovarbasich Estate and ordered that the estate be

3    immediately closed, it no longer exists as a legal entity.

4    The estate can't remain a named non-diverse defendant and we

5    think obviously it's been fraudulently joined in the case.

6    It would be--it is our preference and we think the Court

7    should now rule on the motion to remand regardless of

8    whether plaintiffs appeal Judge Marks' decision to the

9    Supreme Court of Appeals of West Virginia.  That motion must

10   be denied on the basis of Judge Marks' order alone, but as

11   the Court is aware Consolidation Coal Company has made

12   additional, equally persuasive arguments demonstrating

13   fraudulent joinder of Kovarbasich as being wholly separate

14   and apart of the issues addressed by Judge Marks.

15       For example, Judge Kaull found in his September 29

16   decision that indeed the two-year limitations applied and

17   that under the law that existed in 1968 and for many years

18   thereafter, neither the discovery rule nor fraudulent

19   joinder can be applied to toll the two year limitations.

20       So we think clearly, in dealing with the motion to

21   remand, separate and apart from the issue addressed by Judge

22   Marks', this Court is in position to rule that the

23   plaintiffs' claims are barred by the two-year limitation.

24           THE COURT:  All right.  Now let me just see if I

25   can parse that out a little bit more, Mr. Robinson.  The

1    Kovar--how did you pronounce it, Mr. Zurbuch, Kovarbasich?

2         MR. ZURBUCH:  Yeah.  That's how I pronounce it.

3    That's not necessarily correct though but--

4         THE COURT:  It's your client so I'll--I'll go with

5    your pronunciation.  Your--Judge--Judge Marks' ruling

6    pertained only to the Estate of Alex Kovarbasich.  The

7    ruling from Judge Kaull dealt with--or the recommendation

8    from Judge Kaull dealt with a motion for leave to amend the

9    complaint to add Leonard Sacchetti and it also related to

10    other motion practice pertaining to testimony of

11    Mr. Layne--Lawrence Layne, correct?  So--

12         MR. ROBINSON:  That's what Judge Kaull did, yeah.

13         THE COURT:  Yeah.  I'm trying, Mr. Robinson, to

14    understand what you're--what you're trying to tell me about

15    the relationship between the ruling of Judge Marks on

16    Kovarbasich and the recommendation of Judge Kaull with

17    regard to Sacchetti and Layne.

18         MR. ROBINSON:  Well in the motion to remand, Your

19    Honor, it is our contention that plaintiffs have

20    fraudulently joined the Kovarbasich Estate in part because

21    they cannot possibly establish a claim against the estate in

22    state court on grounds that their claims are barred by the

23    two-year limitations.

24         THE COURT:  Well, that--and if--and if Judge Marks'

25    ruling is upheld by the--affirmed by the state Supreme Court

1    that would definitely be the case but I don't think--I am

2    trying to figure out that that has anything to do with the

3    motion--the pending motion to amend.

4              MR. ROBINSON:  Because the issues are the same in

5    the motion to remand and Consolidation Coal Company's motion

6    to dismiss.  That argument--

7              THE COURT:  Wait a minute.

8              MR. ROBINSON:  --is the--

9              THE COURT:  We don't have--we don't have--we don't

10   have Sacchetti or Layne in the case right now.  The case--I

11   thought the case was teed up on fraudulent joinder and the

12   issue--all the issues that relate to--or that issue is

13   related to Judge Marks' ruling on whether the entity could

14   be brought in at this time.  He didn't say anything about

15   the issues addressed by Judge Kaull, right?

16             MR. ROBINSON:  That's correct.  What I am saying,

17   Your Honor, is there are--are six or seven different

18   arguments in opposition to the motion to remand.  The

19   primary argument relates not to the estate, that was an

20   issue being determined in state court.  The primary issues

21   relate to the statute of limitations.  The decision by Judge

22   Kaull, if adopted by--by you would have equal application to

23   the motion to remand and the motion to dismiss; that is, as

24   to all of the claims in this case.  They're barred by the

25   two year limitation within the discovery rule and

14

1    fraudulent--fraudulent representation simply does not apply

2    to toll that limitation period.  So that--that's the

3    connection I'm trying to make.

4             THE COURT:  What I think you're saying is that this

5    case is actually proceeding on a couple of different, not

6    necessarily parallel tracks, but the one involving

7    Kovarbasich and then the issues of whether the motion to

8    amend is fruitless or ought to be granted and that is

9    separate and distinct and really unrelated to the

10   Kovarbasich issue but you're saying this is all part of

11   Consol's overarching argument as to why the case should not

12   be remanded?

13            MR. ROBINSON:  That's right.  And we believe the

14   motion to remand and the motion to dismiss can be ruled upon

15   and this case can be disposed of regardless of what the

16   Supreme Court of West Virginia might do with the appeal in

17   the Marks' ruling.

18            THE COURT:  I think that's where I'm coming up a

19   little short.  Even if I were to agree with Judge Kaull with

20   regard to not letting the plaintiffs amend to add

21   Mr. Sacchetti--Sacchetti, excuse me, explain to me how that

22   also takes care of the issue relating to Alex Kovarbasich's

23   Estate.

24            MR. ROBINSON:  It doesn't and that's not what I'm

25   trying to say, Your Honor.

1          THE COURT:  Okay.

2          MR. ROBINSON:  But what I'm--what I'm trying to say

3    is we have--we have three different things going on here.

4    We have the state court decision by Judge Marks that

5    apparently is going to be appealed to the Supreme Court;

6    that's one.  Separately we have the recommended decision by

7    Judge Kaull; that's two and three, and I guess we can say

8    three and four, when this Court had issued its stay back in

9    April, what it said is it was going to stay any further

10   ruling on the motion to remand and Consolidation Coal

11   Company's motion to dismiss pending Judge Marks' ruling.

12          THE COURT:  Uh-huh (yes).

13          MR. ROBINSON:  That ruling has now been entered.

14   But separate and apart from the issues that Judge Marks

15   ruled upon, this Court can look at the other issues

16   addressed in the motion to remand and the memorandum in

17   opposition to that motion and can look at the issues

18   addressed in Consolidation Coal Company's motion to dismiss

19   that have nothing to do with Judge Marks' decision and--

20          THE COURT:  Well, but--

21          MR. ROBINSON:  And--and--

22          THE COURT:  But you--

23          MR. ROBINSON:  And the appeal and if the Court

24   disposes of the case on the motion to dismiss, which doesn't

25   relate to Mr. Kovarbasich.  It should only relate to

1    Consolidation Coal Company, then if they win on their appeal

2    they can come back later and file another action against

3    Mr. Kovarbasich.

4         THE COURT:  All right.  Well I think it's probably

5    time to hear from Mr. Hrko.

6         MR. HRKO:  Well, Your Honor, for the same reasons

7    that the Court found wisdom in holding off ruling on the

8    motions to remand and motions to dismiss, we--we would like

9    to be able to run the Kovarbasich issue to the finish line,

10   so to speak.  Yeah, there are other arguments

11   assuming--let's say the Supreme Court says Mr. Kovarbasich

12   should be in this case, there are other arguments to remand

13   and other arguments to dismiss but leaving that one out

14   there on the island, so to speak and--and then refiling a

15   case just doesn't--doesn't seem to be the prudent thing to

16   do.

17        THE COURT:  Well I'm not sure that I totally

18   understand that argument either.  Let's see what Judge Kaull

19   recommended.  He--he concluded that the defendants carried

20   their burden of showing the futility of the proposed

21   amendment to add Sacchetti as a defendant based on the--the

22   statute of limitations defense and he then recommended that

23   the motion for leave to amend be denied therefore.

24       So the--we're not going to add--if I uphold that

25   recommendation after briefing, we wouldn't be--you all

1   wouldn't be adding Sacchetti as a defendant.  Kovarbasich is

2   still in there until the Supreme--well he would be in there

3   until the Supreme Court finally said he's not, his Estate is

4   not.  I didn't go back and look at the complaint so you'll

5   need to refresh my recollection.  Is that Estate being sued

6   on the basis that Kovarbasich was an employee of Consol and

7   was acting under the direction of Consol at the time that

8   the alleged events regarding the monitoring system or the

9   air system occurred when the--the system was dis--allegedly

10   disabled?

11          MR. HRKO:  I would think that would be an argument,

12   Your Honor, and that would be an allegation.

13          THE COURT:  Is it pled that way?

14          MR. HRKO:  I'm fairly certain.  I haven't looked at

15   the complaint in a while, Your Honor, but we're fairly

16   certain it is.

17          THE COURT:  Then, Mr. Robinson, I guess my question

18   to you is, if that is the case, and you may know better than

19   I certainly, how would Consol be out of this case if I said

20   they couldn't amend to bring in Sacchetti?

21          MR. ROBINSON:  I'm sorry, Judge, I don't understand

22   the question.

23          THE COURT:  Well, if--if Consol is in here because

24   it's the principal who's responsible for the agent's alleged

25   actions in this case, if the Supreme Court leaves

1    Kovarbasich's Estate in, I think the case goes back to state

2    court for any further rulings on motions to dismiss or so

3    forth, right?

4         MR. ROBINSON:  Not correct, Your Honor.  Again,

5    the--the motion to remand, the Court is going to one day

6    have to address a half dozen other issues relating to

7    statute of limitations.  In other words the--the standard

8    on--on fraudulent joinder is whether they can possibly have

9    a--

10        THE COURT:  There's no--there's no--with regard to

11   the Estate of Kovarbasich, there's no motion to amend.  He's

12   in.  He's in at this point.  He's been pled.  The whole--the

13   whole--the issue that was teed up here was if he couldn't

14   properly be sued under state law, then the motion to remand

15   would be denied, but if he is properly sued and he is a

16   diversity destroying--his Estate is a diversity destroying

17   defendant, then the case goes back and I think under Fourth

18   Circuit teaching I wouldn't be ruling on any other issues,

19   at least as they relate to Consol and Kovarbasich, until

20   that ruling of the Supreme Court is final, right.

21        MR. ROBINSON:  I just don't agree, Your Honor.

22   The--the--the question of whether the Estate was properly

23   appointed by the County Commission is but one of many issues

24   raised in response to the motion to remand and--and under

25   the standard that we're dealing with under *Mays* is whether

1   there is any possibility that plaintiff would be able to

2   establish a cause of action against the in-state defendant

3   in state court and what we're saying is because of the

4   statute of limitations and other issues addressed in our

5   memorandum, there is simply no way they can possibly

6   establish a cause of action against the Kovarbasich Estate

7   in state court even if--even if our Supreme Court decides it

8   was properly appointed.  So all that means if the Supreme

9   Court reverses, that's one issue this Court won't have to

10  deal with.  There are a half dozen other issues relating to

11  remand the Court will have to address in determining whether

12  or not the plaintiff would be able--plaintiffs would be able

13  to establish a cause of action against the Estate in state

14  court.

15          THE COURT:  All right.  Let's assume I don't agree

16  with you, Mr. Robinson, and let me ask you if that's the

17  situation should I go forward with anything else in this

18  case, such as the R&R, until we have that decision from the

19  State Supreme Court?

20          MR. ROBINSON:  Your Honor, there is one issue

21  that--that maybe is of great importance right now.  Judge

22  Kaull has granted leave to Consolidation Coal Company to

23  issue subpoena duces tecum to two different people, Larry

24  Layne and Bonnie Stewart.  Mr. Layne has responded to his

25  subpoena indicating he doesn't have anything responsive to

1    it.  Ms. Stewart has--is getting us some of the documents

2    responsive to the subpoena but is requiring us to file a

3    motion to compel in California where she resides to get

4    those items.

5              THE COURT:  All right.

6              MR. ROBINSON:  So--so--

7              THE COURT:  She's--she's the author of the book,

8    Number Nine, the 1968 Farmington Mine Disaster, right?

9              MR. ROBINSON:  Yes, Your Honor, and--and the motion

10   to compel, there's a strange procedure in California.  When

11   you file a motion in the Central--Central District of

12   California the parties actually file a joint stipulation of

13   it so our portion of that joint stipulation of issues,

14   facts, et cetera, has already been filed.  We're waiting for

15   Ms. Stewart's counsel to get their side together.  So those

16   issues again are wholly unrelated to Judge Marks' order and

17   any potential appeal of it and we certainly don't want to

18   interrupt that process this far in.  So we want to complete

19   the process relating to Ms. Stewart before any of her

20   documents become lost or destroyed.

21       Beyond that--beyond the Bonnie Stewart issues, if the

22   plaintiffs really want to stay this case, we submit it

23   should be a complete stay; no more written discovery, no

24   more affidavits, no more surprise witnesses, no more

25   depositions of Larry Layne or anyone else.  So if they want

1    a stay, let's make it a complete stay, other than the Bonnie

2    Stewart issue that we have to resolve before

3    those--those--the documents disappear.

4              THE COURT:  All right.  Mr.--

5              MR. HRKO:  Your Honor--

6              THE COURT:  Mr. Hrko.

7              MR. HRKO:  Yes.  We--we--we understand the issues

8    with the subpoenas that were issued by--by defendants.

9    We're also very deep into a process with obtaining the

10   deposition of Larry Layne.  We've been over and around the

11   mountain to do that.  We would also like to at least have

12   the Court entertain the idea of us continuing that process,

13   potentially take his deposition as he is a key witness and

14   as he is--he is advanced in age, along with the subpoenas

15   the defendants have issued.  We are a long way into that

16   process and as defendants state--state with respect to their

17   subpoenas, it may be worth it to not stop there but finish

18   that up while we await the decision of the Supreme Court.

19             THE COURT:  All right.  Are we all in?  Are all the

20   arguments made?

21             MR. ROBINSON:  Bill Robinson, Your Honor.  Yes.

22             MR. ZURBUCH:  Pete Zurbuch--

23             THE COURT:  Sorry, Mr. Zurbuch, what?

24             MR. ZURBUCH:  I have nothing further, Your Honor.

25             THE COURT:  All right.  Mr. Hrko?

1          MR. JEVICKY:  Your Honor, this is John Jevicky.

2     Could we--could we brief this stay issue, so we can set

3     forth our--I'm sorry, Bill--I'm out--I'm not with Bill but

4     could we file briefs on why we think the stay should not be

5     issued and--and why the Court should go forward on the other

6     two issues?

7          THE COURT:  I don't think so, Mr. Jevicky.  I think

8     I understand.  I may not agree with everything but I think I

9     understand.  I'm not sure that briefs are going to add much

10    unless you think you've got a--a case on all fours that

11    Mr. Robinson hasn't cited to me that you think would heavily

12    influence where I land on this.

13         MR. JEVICKY:  No, I'll defer to Bill.  I just--I

14    tried to e-mail him.  I just think that maybe some briefing

15    would help because of the back and forth on this.

16         THE COURT:  I followed it.  Thank you.  All right.

17    I'm not going to stay any of the--part of the case related

18    to the issues that Judge Kaull handled on the R&R.  I don't

19    see any reason why those issues, the briefing and the

20    argument on the R&R can't go forward and I will take them

21    under advisement.

22        With regard to the Kovarbasich issue, in light of the

23    fact that Judge Marks' decision is appealable and I believe

24    this is not one of those cases that the State Supreme Court

25    would decide whether it's going to take or not but indeed

1    must take.  Please correct me if I'm wrong.  You all know

2    state procedure so much better than I do.  This is not a

3    discretionary decision as to whether the Court will review

4    this decision, is it?

5           MR. HRKO:  Your Honor, plaintiff here.  That's our

6    understanding as well.

7           THE COURT:  Yeah.  So in light of that and as I see

8    it, that's a completely separate issue.  As of right now

9    where we would stand on that is that I would--with Judge

10   Kaull's appropriate handling of this case to this point, I

11   think while that issue is being resolved whatever discovery

12   goes on here can continue on the issues of Larry Layne and

13   Ms. Stewart and--and I'll manage this discovery--any

14   discovery disputes up to the point where we know what the

15   State Supreme Court is going to do.

16       I'll further--once that's under way and I receive the

17   objections on Judge Kaull's recommendation, I'll determine

18   if I need oral argument and take a look at that and you're

19   certainly free to add any argument on why I shouldn't rule

20   on it at this time or why I should rule on it at this time

21   and what the impact of that would be, but I don't see any

22   benefit to be gained in staying the rest of this case while

23   the Supreme Court looks at the Kovarbasich Estate issue.

24       So that's my ruling.  I'm going to allow the rest of the

25   case to go forward and since the Kovarbasich issue isn't

1    before me; it's up above--it's up at the--the Court, I view

2    the rest of this as informing my judgment on the ultimate

3    decision on the motion to remand.  Okay?

4            MR. SEGAL:  Judge Keeley, this is Scott.  May I

5    please ask a question?  Scott Segal.

6            THE COURT:  Uh-huh (yes).

7            MR. SEGAL:  It's not about your ruling.  As we

8    proceed in the state court case would Your Honor like

9    courtesy copies sent to your Law Clerk of pleadings as

10   they're filed in the state case merely so that you're aware

11   of how that is proceeding, what orders or time frames are

12   being issued by the Court?  I know we can't file that

13   through your federal system but as a courtesy we could

14   certainly send it to your Law Clerk in Chambers so that you

15   are apprised of how that case is moving and I just wanted to

16   know if that's something you would like or would prefer that

17   we not do?

18           THE COURT:  Well, Mr. Segal, I think what I would

19   like is to be informed as to the ultimate schedule the State

20   Supreme Court sets for briefing and oral argument but I

21   think other than that, no.  Okay?

22           MR. SEGAL:  Understood, Your Honor.

23           THE COURT:  I appreciate the offer.  Just so I

24   don't get blindsided by, you know, well we're going to take

25   two years to decide this, that may bring me back to you all

1    on another telephone call but I--so I think the schedule or

2    the calendar the Court sets on this would be very helpful

3    but other than that I don't think it's necessary.

4         MR. SEGAL:  I understand Judge, thank you.

5         THE COURT:  Okay.

6         MR. ROBINSON:  Your Honor, Bill Robinson.  We

7    looked this morning at the Supreme Court's docket, argument

8    docket for tomorrow and the cases that are on there are

9    anywhere from 12--the decisions are anywhere from 12 to 16

10   months old so I think we're probably 12 to 16 months out

11   from having any oral argument at the Supreme Court and then

12   obviously another two or three months before any decision.

13   So we're probably going to push everything back a year and a

14   half.

15        THE COURT:  Well, I understand why you might think

16   so but you never know and I'll wait to see what the Court

17   actually schedules.  Okay?

18        MR. ROBINSON:  All right.

19        THE COURT:  So thank you for that though.  I

20   appreciate it.  All the more reason why we should go forward

21   on the rest of the case if we can.  So what I'd like to have

22   from you now is your plan of discovery so that I can set

23   another conference call with you to approve that discovery

24   and forestall any battles that may be looming on the horizon

25   about who can be deposed, when and how long and everything

1    else.  If you reach an agreement about your discovery plan,

2    that would be preferable for me but if you can't reach an

3    agreement I want to know that and I'm going to carefully

4    manage this with close supervision to make sure that it

5    doesn't get bogged down in a lot of discovery disputes

6    instead of having the discovery actually taken.  So what I'd

7    like to know is if it would be any imposition on all of you

8    if you could provide me with a proposed or joint agreed

9    discovery plan by next Tuesday, the 13th of October?  Is

10   there any objection to that?

11            MR. ROBINSON:  Bill Robinson.  I don't see any

12   reason why we cannot.

13            THE COURT:  Mr. Hrko?

14            MR. HRKO:  Same response, Judge.

15            THE COURT:  Okay.  All right.  Then please

16   consider the order referring discovery to Judge Aloi vacated

17   and discovery will proceed in front of me for the time being

18   and then once I have your proposed discovery plan, if I need

19   to, I'll ask my Law Clerk to get in touch with you to

20   schedule another telephone conference or we will have a

21   meeting up here where we can sit down and just set a

22   discovery schedule that works for everybody.  Okay?

23            MR. HRKO:  All right, Your Honor.  Just for point

24   of clarification, Your Honor, so it is not necessary for us

25   to--to file a motion to recuse Judge Aloi?

1          THE COURT:  You know I asked you to do that and I
2    forgot that I--I actually thought that that might be more
3    deferential to him.  Since I'm going ahead and just grabbing
4    this, I'll let him know that I vacated that order based on
5    his prior--you said he previously recused himself in state
6    court?

7          MR. HRKO:  Yes.

8          THE COURT:  Okay.  I'll let him know that that's
9    why I went ahead and did that and hopefully he'll understand
10   and then that's less work for you.  I apologize that I
11   forgot I told you to do that.

12         MR. HRKO:  That's all right.  And we will--we will
13   send your Law Clerk a copy of the recusal that he filed in
14   state court.

15         THE COURT:  Okay.  Thanks very much.  Is there
16   anything else we need to do today?

17         MR. HRKO:  Nothing from the plaintiff, Your Honor.

18         THE COURT:  From the--

19         MR. ROBINSON:  Nothing from Consol, Your Honor.

20         THE COURT:  Okay.

21         MR. ZURBUCH:  No, Your Honor.

22         THE COURT:  Thanks very much.  This Court stands in
23   recess until one-thirty.  Thank you.

24         (The hearing concluded at 1:35 p.m., 10-05-2015)

25

CERTIFICATE

I, Linda L. Bachman, Official Reporter of the United States District Court for the Northern District of West Virginia, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the above styled action on October 5, 2015, as reported by me by stenomask.

I certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

Given under my hand this 13th day of October, 2015.


　　　　/s/ Linda L. Bachman
Linda L. Bachman, CCR, CVR-M
Official Reporter, United States
District Court for the Northern
District of West Virginia