IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL D. MICHAEL, as the
Administrator of the ESTATE
OF JACK D. MICHAEL, and
JUDITH A. KUHN, as the
Administratrix of the ESTATE
OF PAUL F. HENDERSON, et al.,**

        **Plaintiffs,**

**v.**                  //    CIVIL ACTION NO. 1:14CV212
                                    (Judge Keeley)

**CONSOLIDATION COAL COMPANY,**

        **Defendant.**

### MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99] AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]

Pending before the Court are the Report and Recommendation ("R&R") of United States Magistrate Judge (ret.) John S. Kaull (dkt. no. 99), and the motion to dismiss filed by the defendant, Consolidation Coal Company ("CCC") (dkt. no. 4). This case stems from the deaths of seventy-eight miners as a result of a tragic coal mining explosion in 1968. Ultimately, the Court concludes that the Plaintiffs' wrongful death claim is barred by the then applicable two-year limitation period, and was not tolled by either the discovery rule or the fraudulent concealment doctrine. Accordingly, the Court **ADOPTS** the R&R and **GRANTS** the defendant's motion to dismiss.

MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]

## I. BACKGROUND

**A.    Factual Background**

On the fateful day of November 20, 1968, the Consol No. 9 coal mine ("the Mine"), located near Farmington, West Virginia, exploded and caught fire, resulting in the deaths of seventy-eight coal miners. Following ten years of recovery efforts, the Mine was permanently sealed in November of 1978.

At the time of the explosion, the Mine had four ventilation fans that controlled the level of methane buildup resulting from the mining operations. The No. 3 fan, which is the only fan at issue in this case, was located at Mod's Run near the 4 North area of the Mine ("Mod's Run fan"). Each fan was controlled by a "FEMCO Supervisory Control" safety alarm system ("FEMCO"), which was designed to trigger a red light and audible alarm in the Mine's lamp house whenever the fan slowed down or stopped. When triggered, the alarm would notify the underground miners of the situation; if the fan remained inoperable for more than twelve minutes, the alarm would shut down electricity to the Mine.

For the next twenty-two years, inspectors from various state and federal agencies conducted multiple investigations into the fire and explosion at the Mine. One of the inspectors was Larry L.

<u>MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]</u>

Layne ("Layne"), who worked for the Mine Safety and Health Administration ("MSHA"). Layne filed a memorandum of his investigation on September 15, 1970, in which he reported the following:

> On September 5, 1970, 12am-8am shift, the Mods Run substation was energized for the first time since the explosion of November 20, 1968. The electrician (name withheld by request) reported that while energizing the substation he found evidence to indicate that the FEMCO fan alarm system for Mod's Run fan had been rendered inoperable prior to the explosion. The fan alarm system had been bridged with jumper wires; therefore, when the fan would stop or slow down, there was no way of anyone knowing about it because the alarm system was bypassed . . . .

(Dkt. No. 1-19 at 13).

In March, 1990, nearly twenty years after Layne wrote his memorandum, MSHA issued an investigation report, stating in pertinent part:

> . . . [t]he ventilation along the Main West headings was inadequate overall, and most probably non-existent in some areas between 1 South and 4 North. On the day before the explosion . . . methane accumulated to about four percent on the right side of the 7 South section for a distance of approximately 1,000 feet out by the working section because of inadequate ventilation and the lack of sufficient ventilation controls . . . and the FEMCO Supervisory Control (fan monitoring and mine power cutoff system) was not operating properly at the time the explosion occurred, as mining operations continued at the face after the explosion.

<u>Id.</u>

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]**
**AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

Although the Plaintiffs acknowledge that they became aware of Layne's memorandum sometime in 2008, they allege that it was not until June 9, 2014, that they learned that the chief electrician at the Mine, Alex Kovarbasich ("Kovarbasich"), was the person who had rendered the FEMCO alarm on the Mod's Run fan inoperable.[1] Thus, they claim that, from November 20, 1968 until June 14, 2014, they never knew the identity of the person responsible for rendering the fan inoperable, nor could they have discovered his identity through the exercise of reasonable diligence. Further, they contend that neither Kovarbasich nor CCC ever disclosed that the Mod's Run fan was "intentionally rendered inoperable by mine management." Id. at 14.

B.    **Procedural Background**

On November 6, 2014, the Plaintiffs and class representatives, Michael D. Michael, as the Administrator of the Estate of Jack D. Michael, and Judith A. Kuhn, as the Administratrix of the Estate of Paul F. Henderson (collectively "Plaintiffs"), brought suit in the Circuit Court of Marion County, West Virginia "on behalf of a class

---

[1]CCC contends that Kovarbasich was not "chief electrician," but simply a "shop mechanic, an hourly union position." (Dkt. No. 1 at 5, n. 1). Regardless, Kovarbasich's true position at the Mine is not important to the discussion here.

of the estates of the seventy-eight (78) coal miners," against CCC and Albert Marano, Sheriff of Harrison County ("Sheriff"), as Administrator of the Estate of Kovarbasich, who had died on August 3, 1992. The complaint alleges one count of "fraud, concealment and nondisclosure." Id. at 19.

On December 11, 2014, CCC removed the case to this Court based on diversity jurisdiction.  It argued that the Plaintiffs had fraudulently joined Kovarbasich to destroy diversity, (dkt. no. 1), and that the Harrison County Commission had improperly appointed Sheriff Marano as Administrator of the Kovarbasich Estate.  It contended that the Estate, which had been closed since April 25, 1994, should never have been reopened.  It also argued that Kovarbasich was not a proper defendant because any claims against him were barred by the statute of limitations and the doctrine of laches. Id.

Pursuant to Fed. R. Civ. P. 12(b)(6), CCC moved to dismiss the suit against it on December 17, 2014, on the basis that the Plaintiffs' claims were barred by the statute of limitations. (Dkt. No. 4). Shortly after that, the Plaintiffs filed a motion to remand the case to the Circuit Court of Marion County.  They denied that Kovarbasich had been fraudulently joined, or that their claims were

barred by the statute of limitations. They also moved to stay consideration of CCC's motion to dismiss until after the Court ruled on their motion to remand. (Dkt. No. 10).

On February 9, 2015, while the parties' motions were pending, the Plaintiffs moved to "Preserve Evidence and Promptly Perpetuate the Testimony of Leonard Sacchetti and Request Immediate Hearing." (Dkt. No. 22). The motion asserted that Leonard Sacchetti ("Sacchetti"), a former electrician at the Mine, had personal knowledge of the identity of the individual who had bypassed the FEMCO alarm on the Mod's Run fan in 1968. Because Sacchetti was ninety years old, the Plaintiffs sought an order authorizing them to promptly take his videotaped deposition. The Court granted the motion and ordered that, in recognition of Sacchetti's advanced age, the parties work together to establish parameters for the deposition.

Shortly after Sacchetti's deposition, on April 6, 2015, the Plaintiffs filed a motion to "Preserve Evidence and Promptly Perpetuate the Testimony of Larry Layne and Request Immediate Hearing." (Dkt. No. 57). They asserted that Layne knew the identity of the person who had reported to him that someone had bridged the Mod's Run fan. As they had when seeking Sacchetti's deposition, the

## MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
## AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]

Plaintiffs maintained that, because of Layne's advanced age (80 years old at the time), it was imperative to promptly secure his testimony. On April 10, 2015, Magistrate Judge Kaull permitted the Plaintiffs to depose Layne on a date certain more than 180 days from the entry of his order, which would allow them time to initiate any process required under 29 C.F.R. §§ 2.20 et seq.[2] (Dkt. No. 57 at 5). In addition, he authorized the defendants to conduct discovery of certain enumerated categories of information relevant to the deposition of Layne. Id.

Also on April 10, 2015, after it learned that the Circuit Court of Harrison County was reviewing CCC's appeal of the County Commission's appointment of the Sheriff as Administrator of Kovarbasich's Estate, the Court stayed a ruling on the pending motions, noting that, in the interests of federalism, comity, and

---

[2]This regulation "sets forth the procedures to be followed whenever a subpoena, order, or other demand (hereinafter referred to as a demand) of a court or other authority, in connection with a proceeding to which the U.S. Department of Labor ["DOL"] is not a party, is issued for the production or disclosure of (1) any material contained in the files of the Department, (2) any information relating to material contained in the files of the Department, or (3) any information or material acquired by any person while such person was an employee of the Department as a part of the performance of his official duties or because of his official status." 29 C.F.R. § 2.20(a). As Layne was an employee of the DOL, his testimony and records were subject to this regulation.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]**
**AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

judicial economy, the surest way to avoid "the possibility of inconsistent adjudications and unnecessary entanglement between the federal and state court systems in West Virginia" was to stay any ruling on the motion to remand pending a decision from the Supreme Court of Appeals of West Virginia ("Supreme Court of Appeals"). (Dkt. No. 56 at 3-4).

During the stay, on July 31, 2015, the Plaintiffs sought leave to amend their complaint in order to add Sacchetti as a defendant. (Dkt. No. 64). They contended that they had only become aware of his role in bridging the Mod's Run fan on April 3, 2015. CCC opposed the motion, contending that, in "direct and intentional violation of this Court's April 10, 2015 Order [limiting discovery]," the Plaintiffs had met with Layne on April 3, 2015, and had secured his affidavit.[3] (Dkt. No. 68 at 2). In CCC's view, because Plaintiffs' motion for leave to amend rested solely on an improperly obtained affidavit, the Court should strike it as improper. Id. Alternatively, CCC asked the Court to strike Layne's affidavit and any reference to it from the motion to amend, and to afford the affidavit no consideration in deciding that motion.

---

[3]The motion also argued that, because he was a DOL employee, taking Layne's affidavit without authorization from the DOL violated 29 C.F.R. §§ 2.20, et seq.

Id. Finally, it sought to prohibit the Plaintiffs from introducing Layne's affidavit or any testimony from it into evidence in the case. Id.

The Court referred these motions to Magistrate Judge Kaull, who concluded that the Plaintiffs had not violated any court order or 29 C.F.R. §§ 2.20, et seq.(Dkt. No. 97 at 7-10). Accordingly, he denied CCC's attempt to strike Layne's affidavit or testimony. Id. at 10. As to the Plaintiffs' motion for leave to amend their complaint, Magistrate Judge Kaull indicated he would address that issue and CCC's objections in a forthcoming R&R. Id.

On September 29, 2015, Magistrate Judge Kaull entered an R&R that recommended the Court deny the Plaintiffs' motion for leave to amend the complaint. (Dkt. No. 99). It also concluded that, despite having characterized their complaint as one for fraud, the Plaintiffs actually had alleged claims for wrongful death and deliberate intent, both of which have a two-year statute of limitations. Id. at 13-15. It further concluded that, as to the claims against Sacchetti, neither the discovery rule nor the fraudulent concealment doctrine tolled the statute of limitations because neither had been available in wrongful death actions in

1968.[4] Id. at 21. Because the statute of limitations barred any claim against Sacchetti, the R&R recommended that the Court deny, as futile, the Plaintiffs' motion for leave to add him as a defendant. Id. at 21, 39.

On September 30, 2015, the Court stayed all proceedings in this case pending a ruling by the Circuit Court of Harrison County on CCC's appeal from the Harrison County Commission's decision to reopen the Kovarbasich Estate. (Dkt. No. 100). Two days later, Circuit Court Judge John Lewis Marks vacated and reversed the Commission's decision, and ordered that the Estate be re-closed. Judge Marks also denied the Plaintiffs' motion to stay his order pending their appeal to the Supreme Court of Appeals. After this quick turn of events prompted the Court to lift its stay in the case on October 2, 2015, the Plaintiffs filed objections to Magistrate Judge Kaull's recommendation that their complaint pled claims for wrongful death and deliberate intent, not fraud. (Dkt. No. 106). They contended that their claim was for fraud, and also argued that, even if their complaint was construed to state claims for wrongful death and deliberate intent, the statute of

---

[4]As discussed later in this opinion, the R&R also concluded that any stand alone claim for fraudulent concealment failed as to Sacchetti.

limitations on those claims had been tolled by both the discovery rule and fraudulent concealment doctrine. _Id._ In response, CCC contended that the Court should adopt the R&R. (Dkt. No. 151).

Based on the closure of the Kovarbasich Estate, Sheriff Marano and CCC moved to dismiss the Estate as a party to this action. (Dkt. Nos. 118 and 122). The Plaintiffs, however, argued that the Court should not decide that motion prior to deciding their motion to remand, and that, because they were in the process of appealing Judge Marks's order, it should stay the case in its entirety pending a ruling from the Supreme Court of Appeals on the re-closure of the Estate. (Dkt. No. 121). The Court agreed and stayed all proceedings pending a decision from the Supreme Court of Appeals. (Dkt. No. 124).

On March 8, 2016, the Plaintiffs moved to lift the stay on a limited basis in order to depose Layne, noting that the parties had exchanged discovery relevant to Layne's knowledge of the incidents, and their concern about his advanced age. (Dkt. No. 125). CCC opposed lifting the stay, because it was waiting for the DOL to release documents it needed to properly depose Layne. (Dkt. No. 127). The Court denied the motion to lift the stay on March 10, 2016. (Dkt. No. 130).

## MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
## AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]

On November 10, 2016, the Supreme Court of Appeals affirmed Judge Marks's decision to re-close the Kovarbasich Estate. In re: Estate of Alex Kovarbasich, No. 15-1032, 2016 WL 6651583 (W.Va. 2016). Following that, the Court lifted its stay and scheduled a status conference with the parties. (Dkt. No. 139). During that conference, it denied the motion to remand, granted the motion to dismiss the Estate of Kovarbasich, and permitted the parties to proceed with Layne's deposition and other limited discovery. (Dkt. No. 141). The Court also found that none of that discovery would impede its ability to rule on Plaintiffs' objections to the R&R and CCC's motion to dismiss. Id.

Finally, as a result of a dispute between the parties about Layne's deposition, on March 3, 2017, the Court ordered that the deposition should proceed, and Layne was deposed on March 8, 2017. (Dkt. No. 158).

### II. STANDARD OF REVIEW

### A.   Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

However, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir.

2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

**B.    Amendment Pursuant to Fed. R. Civ. P. 15**

Under the federal civil rules, a plaintiff may amend a complaint "once as a matter of course" within either 21 days after serving the complaint, or 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Although granting or denying a motion to amend is within the discretion of the Court, Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013), the Fourth Circuit has interpreted Rule 15(a)(2) to require that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); See also Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999).

Leave to amend is futile when the amended complaint would not survive a motion to dismiss, <u>Perkins v. United States</u>, 55 F.3d 910, 917 (4th Cir. 1995), or "when the proposed amendment is clearly insufficient or frivolous on its face." <u>Johnson</u>, 785 F.2d at 510; <u>Burns v. AAF—McQuay, Inc.</u>, 980 F.Supp. 175, 179 (W.D. Va. 1997) (noting that proper standard of review when amendment is challenged on grounds of futility is whether the proposed amendment states a claim upon which relief can be granted). When assessing futility, "a district court may look to 'substantive or procedural considerations.'" <u>Jones v. HSBC Bank USA, N.A.</u>, 444 Fed.Appx. 640, 643 (4th Cir. 2011) (quoting <u>Davis v. Piper Aircraft</u>, 615 F.2d 606, 613 (4th Cir. 1980)).

### III. DISCUSSION

CCC contends that the Plaintiffs' objections to the R&R simply reiterate arguments previously addressed by Magistrate Judge Kaull. The issues that are dispositive of the recommendation to deny the Plaintiffs leave to amend their complaint to add Sacchetti, however, are also dispositive of CCC's motion to dismiss, which was not the subject of the R&R. Therefore, because Plaintiffs' objections relate to issues that are germane to both the R&R and

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

the motion to dismiss, the Court will review <u>de novo</u> the R&R, the parties' pleadings, and the applicable case law.

Notably, at the outset, although the Plaintiffs label their case as one for fraudulent concealment, Magistrate Judge Kaull rejected that argument, finding they had pled a claim for wrongful death, to which the two-year statute of limitations applied. Because neither the discovery rule nor the doctrine of fraudulent concealment applied to wrongful death actions in 1968, he recommended that the Court deny Plaintiffs' motion to amend as futile. In their objections, the Plaintiffs argue that, because the Supreme Court of Appeals later extended the discovery rule and fraudulent concealment doctrine to wrongful death actions, the Court should retroactively apply them in this case.

CCC contends that, even if retroactively applied, the statute of limitations would still bar the Plaintiffs' wrongful death claim. It also argues that any claim against Sacchetti would fail because he owed no duty of disclosure to the Plaintiffs.

For the reasons that follow, the Court **GRANTS** CCC's motion to dismiss the claims against it, and **DENIES** the Plaintiffs' motion for leave to add Sacchetti as a defendant as such an amendment would be futile.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

## A. The Nature of the Plaintiffs' Claims

Magistrate Judge Kaull determined that the Plaintiffs' complaint alleged claims of wrongful death or deliberate intent. At common law, there was no cause of action for wrongful death. Thus, "the right or cause of action for wrongful death, if maintainable, exists under and by virtue of the provisions of the wrongful death statute . . . ." Baldwin v. Butcher, 184 S.E.2d 428, 429 (W.Va. 1971); see also Miller v. Romero, 413 S.E.2d 178, 181, (W.Va. 1991) overruled in part, Bradshaw v. Soulsby, 558 S.E.2d 681 (2001) ("In Baldwin . . . we held that no right of action for wrongful death existed separate and apart from the wrongful death statute."). West Virginia's wrongful death statute, codified at W. Va. Code § 55-7-5 and § 55-7-6, provides for who may bring such a suit, the amount and distribution of damages, and the period of limitation for commencing such an action.

Here, Plaintiffs assert that, due to CCC and Sacchetti's fraudulent concealment, they were unable to discover and file a wrongful death action on a timely basis. (Dkt. No. 1-19 ("Defendants deprived plaintiffs of their right to obtain relief against defendants under West Virginia's wrongful death statute.")). They contend that, "[p]ursuant to W. Va. Code § 55-7-6

(1967)," they are entitled to $110,000 per deceased coal miner, the maximum recovery allowed under the statute in 1968. Id. at 56.

The Court agrees that the Plaintiffs' claims sound in wrongful death. An allegation of fraud that prevents the bringing of a wrongful death suit can hardly be said to exist "separate and apart from the wrongful death statute." Miller, 413 S.E.2d at 181. Indeed, any fraud claim in this case is no more than a thinly veiled argument in support of Plaintiffs' contention that the two-year limitation period regarding wrongful death actions should be tolled based on fraudulent concealment. Nevertheless, tracking Magistrate Judge Kaull's R&R, the Court will consider all claims alleged or potentially alleged in the complaint.

**B.    Wrongful Death**

When the explosion in the No. 9 mine occurred in 1968, W. Va. Code § 55-7-6 (1967) provided that "every [wrongful death] action shall be commenced within two years after the death of such deceased person." The Plaintiffs do not dispute that, if their action is one for wrongful death, the applicable statute of limitations is two years. As noted earlier, however, they contend that the statute of limitations was tolled either by the discovery rule or by the fraudulent concealment doctrine.    They further

18

submit that, even if those tolling doctrines were unavailable in 1968, their subsequent adoption in wrongful death actions should be applied retroactively.

### 1.    _Historical Wrongful Death Statute of Limitations_

An action for wrongful death is a statutory creation. As such, in 1968, and for some time thereafter, West Virginia courts held that the applicable two-year limitation period was a statute of repose. In other words, it was an element of the action that could not be tolled and, strictly speaking, was not a statute of limitations. See Lambert v. Ensign Manufacturing Co., 26 S.E. 431, 432 (W.Va. 1896) ("The bringing of the suit within two years . . . is made an essential element of the right to sue . . . . And it is made absolute, without saving or qualification of any kind whatever. There is no opening for explanation or excuse. Therefore, strictly speaking, it is not a statute of limitation."); see also Prater v. Norfolk & Western Ry. Co., 1995 WL 493014, at *1 (4th Cir. 1995) (per curiam).

Moreover, in Rosier v. Garron, Inc., 199 S.E.2d 50, 53-54 (1973), the Supreme Court of Appeals held that West Virginia's savings statute, W. Va. Code § 55-2-18, did not apply to actions

for wrongful death.[5] In support of this conclusion, the court

reached back to its decision in <u>Smith v. Eureka Pipe Line Co.</u>, 8

S.E.2d 890 (1940), observing:

> [T]he saving provision of Code 55-2-18 does not apply to
> actions for wrongful death. In the <u>Smith</u> case the Court
> reasoned that the two year limitation upon the bringing
> of an action for wrongful death is an integral part of
> the statute itself and creates a condition precedent to
> the bringing of an action which bears no relationship to
> statutes of limitation and contains no language that
> would justify a joint construction with the statutes of
> limitation. The Court in <u>Smith</u> traced the origin of the
> saving provision to the revised Code of Virginia of 1819,
> which contained a substantially similar provision as that
> contained in the Virginia Code of 1849. The provisions of
> this section have remained in effect in West Virginia
> from the State's inception until the present time. As
> there were no enactments in the United States creating
> the right of recovery for death by wrongful act until
> after the British Parliament passed Lord Campbell's Act
> in 1846, the Court in <u>Smith</u> reasoned that it is obvious
> that the savings section at the time of the original
> enactment could not have been intended to include
> proceedings for death by wrongful act, as in 1819 there
> was no cause of action for wrongful death. The two years
> limitation on the bringing of an action for wrongful
> death is an integral part of the cause of action, and
> statutes in derogation of common law will be strictly
> construed.

<u>Rosier</u>, 156 W.Va. at 53-54.

---

[5]The savings statute allows for re-filing a lawsuit that was
originally timely filed if "the action was involuntarily dismissed
for any reason not based upon the merits of the action; or [] the
judgment was reversed on a ground which does not preclude a filing
of new action for the same cause." W. Va. Code § 55-2-18(a).

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

Yet again, in 1980, the Supreme Court of Appeals confirmed that the strict two-year limitation on bringing suits for wrongful death was a non-tollable condition precedent. <u>Huggins v. Hospital Board of Monongalia County</u>, 270 S.E.2d 160 (W.Va. 1980). The ruling in <u>Huggins</u> relied on the precedent established in <u>Lambert</u>, <u>Rosier</u>, and <u>Smith</u>:

> This Court has reasoned that the two year limitation upon
> the bringing of an action for wrongful death is an
> integral part of the statute itself and creates a
> condition precedent to the bringing of an action. The
> condition is made absolute and, strictly speaking, is not
> a statute of limitations. The time fixed by the statute
> creating the right is one of the components entering into
> the plaintiff's right of recovery. Once the statutory
> period expires, there remains no foundation for judicial
> action. In a preceding [sic] which is barred by the
> statute of limitations, however, the basis for relief
> continues, but the use of the means of enforcing it may
> be barred if the lapse of time is affirmatively asserted
> for that purpose. The issue here is whether the action
> was properly commenced within two years after the death
> of the appellant's decedent.

<u>Id.</u> at 162-63 (internal citations omitted) (citing <u>Rosier</u>, 199 S.E.2d 50; <u>Smith</u>, 8 S.E.2d 890; <u>Hoover v. Chesapeake & O. Ry. Co.</u>, 33 S.E. 224 (W.Va. 1899); <u>Lambert</u>, 26 S.E. 431).

Still later, in 1991, the Supreme Court of Appeals reinforced that the discovery rule did not generally extend to wrongful death

claims.[6] In <u>Miller v. Romero</u>, it stated that "[t]he plaintiff's argument for extending the time limitations for wrongful death cases ignores a crucial line of West Virginia case law interpreting our wrongful death act." 413 S.E.2d at 180.

It is thus clear that, at the time of the miners' deaths in 1968, and for some time thereafter, neither the discovery rule nor the doctrine of fraudulent concealment was available to toll the two-year limitation on bringing a wrongful death action. Absent those tolling mechanisms, the instant suit, brought forty-six years after the explosion, is late by more than forty-four years.

### *2.    The Discovery Rule as Applied to Wrongful Death Actions*

The discovery rule provides that "the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." <u>Gaither v. City Hosp., Inc.</u>, 487 S.E.2d 901, 906 (W.Va. 1997) (citing Syl. Pt. 1, <u>Cart v. Marcum</u>, 423 S.E.2d 644, 645 (W. Va. 1992) <u>overruled in part by</u> <u>Dunn v. Rockwell</u>, 689 S.E.2d 255 (W.Va. 2009)). "The 'discovery rule' is generally applicable to all torts, unless there is a clear statutory

---

[6]The court in <u>Miller</u> did, however, provide an exception to the two-year limitation for those cases in which "evidence of fraud, misrepresentation, or concealment of material facts surrounding the death is presented." 413 S.E.2d at 183. This exception relates to the fraudulent concealment doctrine discussed <u>infra</u>.

prohibition of its application." Syl. Pt. 2, <u>Cart</u>, 423 S.E.2d at 645. As noted, however, the discovery rule did not apply to wrongful death claims at the time of the miners' deaths.

It was not until 2001, thirty-three years after the explosion at the No. 9 mine, that, in <u>Bradshaw v. Soulsby</u>, the Supreme Court of Appeals overruled <u>Miller v. Romero</u> and extended the discovery rule to wrongful death actions. 558 S.E.2d 681. In syllabus points 7 and 8 of <u>Bradshaw</u>, the court applied the discovery rule to wrongful death actions and clarified the conditions under which the statute of limitations would commence:

> 7.  The discovery rule, as set forth in <u>Gaither v. City Hospital</u>, 199 W.Va. 706, 487 S.E.2d 901 (1997), applies to actions arising under the wrongful death act. To the extent that <u>Miller v. Romero</u>, 186 W.Va. 523, 413 S.E.2d 178 (1991) conflicts with this holding, it is overruled.

> 8.  In a wrongful death action, under the discovery rule, the statute of limitation contained in W.Va. Code, 55-7-6(d) [1992] begins to run when the decedent's representative knows or by the exercise of reasonable diligence should know (1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death.

Syl. Pts. 7-8, 558 S.E.2d at 683.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]**
**AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

Of particular importance to this case, <u>Bradshaw</u> specifically recognized that the prohibition on the discovery rule's application to wrongful death actions had remained in place following <u>Miller</u>. <u>Id.</u> at 685 ("We must therefore revisit our decision in <u>Miller v. Romero</u> to determine whether the discovery rule can be used to toll the 2-year statute of limitation for a wrongful death claim contained in W.Va. Code, 55-7-6(d)."). Thus, it is clear that, until 2001, the discovery rule was unavailable to toll the two-year limitation on filing a wrongful death action.

> ### 3. *Fraudulent Concealment[7] Tolling Doctrine as Applied to Wrongful Death Actions*

West Virginia had recognized that fraudulent concealment could toll a limitation period well before 1968. <u>See, e.g.</u>, Syl. Pt. 5, <u>Vanbibber v. Beirne</u>, 6 W.Va. 168 (W.Va. 1873). In <u>Hundley v. Martinez</u>, the Supreme Court of Appeals reviewed a series of its prior rulings applying the fraudulent concealment doctrine to medical negligence cases, and concluded that "the statute of limitations begins to run when the fraud is penetrated and the

---

[7]As discussed below, the Plaintiffs allege fraudulent concealment as a stand alone cause of action in their complaint. Nonetheless, in their objections to the R&R and their response to CCC's motion to dismiss, they embrace fraudulent concealment as a doctrine that would toll the two-year limitation period should the Court conclude that their claims sound in wrongful death.

injury is discovered or when, by the exercise of reasonable diligence, it should have been discovered." 158 S.E.2d 159, 165 (W.Va. 1967).

Nonetheless, as late as 1980, in Huggins, the Supreme Court of Appeals made it clear that no tolling doctrines, including fraudulent concealment, applied to the two-year limitation on wrongful death actions as that limitation was a statute of repose and a condition precedent to bringing suit. 270 S.E.2d at 162-63 ("The condition is made absolute and, strictly speaking, is not a statute of limitations. The time fixed by the statute creating the right is one of the components entering into the plaintiff's right of recovery.").

In fact, it was not until 1991, in Miller, that the Supreme Court of Appeals, in response to a certified question, first extended the tolling doctrine of fraudulent concealment to wrongful death actions.

The question certified was:

In a medical malpractice case, is the wrongful death statute of limitations tolled by the allegation of fraudulent concealment on the part of the defendant and/or failure on the part of the plaintiff to discover the cause of the decedent's death?

The Court's answer was:

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

> The two-year period which limits the time in which a decedent's representative can file suit is extended only when evidence of fraud, misrepresentation, or concealment of material facts surrounding the death is presented.

413 S.E.2d at 179, 183.

Here, in support of their argument that the statute of limitations was tolled by the doctrine of fraudulent concealment, the Plaintiffs also rely on W.Va. Code § 55-2-17 (1923), which provided in pertinent part:

> Where any such right as is mentioned in this article shall accrue against a person who had before resided in this State, if such person shall, by departing without the same, or by absconding or concealing himself, **or by any other indirect ways or means, obstruct the prosecution of such right**, . . . the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted.

(Dkt. No. 106 at 7 (emphasis added by Plaintiffs)). Plaintiffs argue that this statute "must be read in pari materia with W. Va. Code § 55-7-6 (1967) so as to permit the tolling of the statute of limitations under the circumstances presented." (Dkt. No. 152 at 7).

This argument is unavailing. None of the cases preceding Huggins recognized any statutory tolling provisions applicable to the wrongful death statute. On the contrary, in Rosier and Smith, the court had emphasized that even the one-year savings statute,

26

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]**
**AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

W. Va. Code § 55-2-18, had no impact on the strict two-year limitation. <u>Smith</u>'s reasoning as to why the savings clause was inapplicable is particularly instructive regarding why § 55-2-17 is inapplicable:

> It is, of course, clear that Code, 55-2-18, [the savings statute,] applies universally to statutes of limitation, and that it is to be read in pari materia with our other statutes dealing with that subject matter. It is also clear that Code, 55-7-5 and 6, under our present decisions bear no relationship to statutes of limitation, and contain no language that would justify a joint construction therewith.

8 S.E.2d at 892.

Clearly, from the time of the miners' deaths in 1968 until 1991, when the Supreme Court of Appeals decided <u>Miller v. Romero</u>, the doctrine of fraudulent concealment was unavailable to toll the two-year limitation on filing wrongful death actions.

### *4. Retroactivity of Discovery Doctrine and Fraudulent Concealment*

The Plaintiffs next contend that, even if the discovery rule and fraudulent concealment doctrine were unavailable to toll wrongful death cases at the time of the mine explosion, the Court nevertheless should afford them retroactive applicability in this case. (Dkt. No. 106 at 6, 8; Dkt. No. 12 at 6). In <u>Bradley v. Appalachian Power Co.</u>, the Supreme Court of Appeals laid out six

factors that courts should weigh in determining whether a decision

should be afforded retroactivity:

> In determining whether to extend full retroactivity, the
> following factors are to be considered: First, the nature
> of the substantive issue overruled must be determined. If
> the issue involves a traditionally settled area of law,
> such as contracts or property as distinguished from
> torts, and the new rule was not clearly foreshadowed,
> then retroactivity is less justified. Second, where the
> overruled decision deals with procedural law rather than
> substantive, retroactivity ordinarily will be more
> readily accorded. _Third, common law decisions, when
> overruled, may result in the overruling decision being
> given retroactive effect, since the substantive issue
> usually has a narrower impact and is likely to involve
> fewer parties_. Fourth, where, on the other hand,
> substantial public issues are involved, arising from
> statutory or constitutional interpretations that
> represent a clear departure from prior precedent,
> prospective application will ordinarily be favored.
> Fifth, the more radically the new decision departs from
> previous substantive law, the greater the need for
> limiting retroactivity. Finally, this Court will also
> look to the precedent of other courts which have
> determined the retroactive/prospective question in the
> same area of the law in their overruling decisions.

Syl. Pt. 5, 256 S.E.2d 879 (W.Va. 1979)(emphasis added); _see also_

_Sitzes v. Anchor Motor Freight, Inc._, 289 S.E.2d 679, 683 (W.Va.

1982) (summarizing _Bradley_ factors).

It is not necessary to decide whether the adoption of the

discovery rule and fraudulent concealment doctrine in wrongful

death actions should apply retroactively because, even if the

<u>Bradley</u> factors generally weighed in favor of doing so, their retroactive application still would not extend to Plaintiffs' case.

Although the general rule is that "appellate decisions are presumed to apply retroactively," <u>BPI, Inc. v. Nationwide Mut. Ins. Co.</u>, 773 S.E.2d 647, 651 (W.Va. 2015), retroactivity does not extend back ad infinitum but is limited to those "cases pending in the circuit courts or on appeal." <u>Richmond v. Levin</u>, 637 S.E.2d 610, 616 (W.Va. 2006). The Supreme Court of Appeals of West Virginia, like all courts in the country, "adheres to the common law principle that, as a general rule, judicial decisions are retroactive in the sense that they apply both to the parties in the case before the court and to all other parties in pending cases." <u>Caperton v. A.T. Massey Coal Co., Inc.</u>, 690 S.E.2d 322, 350 (W.Va. 2009) (quoting <u>Crowe v. Bolduc</u>, 365 F.3d 86, 93 (1st Cir. 2004); <u>see also</u> <u>BPI</u>, 773 S.E.2d at 651 (recognizing that retroactivity is limited "both to the parties in the case before the court and to all other parties in pending cases" (quoting <u>Caperton</u>, 690 S.E.2d at 350)).

Indeed, <u>Richmond</u> unambiguously rejected an argument by the appellee that retroactive application of a newly pronounced rule of law would "revive all cases decided before the decision was

29

reached." 637 S.E.2d at 617. The court emphasized that, because retroactivity was limited to those "cases pending in the circuit courts or on appeal," it would necessarily be limited to the narrow number of "cases pending in the circuit courts or on appeal" at the time of the decision. Id. Notably, the court stated that it was "not aware of any prior 'civil' decision of this Court that was made retroactive to cases in which the appeal period had expired." Id. at 616-17.

Later decisions of the Supreme Court of Appeals weighing the third factor of Bradley have recognized the limited reach of retroactivity. For example, in Sitzes, where the court noted that retroactivity satisfied the third Bradley factor because "our statute of limitations . . . limits the class that will benefit by retroactivity," that class did not extend beyond potential claims still viable under the then applicable statute of limitations. Subsequently, in Richmond, Caperton, and BPI, the court limited retroactivity to suits actually filed at the time of the decision.

To apply the holdings in Bradshaw and Miller to the wrongful death claims asserted in this case would reach far beyond the limits of retroactivity recognized by the Supreme Court of Appeals - to then pending cases, or, at the outer limit, to cases that, at

30

MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]

the time of the decision, were still within the applicable statute
of limitations. Consequently, neither the discovery rule nor the
doctrine of fraudulent concealment is retroactively applicable in
this case.

### 5.    *The Discovery Rule would not Toll the Statute of Limitations in this Case*

Even if the discovery rule had been available in 1968 to toll
the running of the statute of limitations in wrongful death
actions, it would not have saved the Plaintiffs' claims. The
discovery rule tolls the statute of limitations only until "the
decedent's representative knows or by the exercise of reasonable
diligence should know (1) that the decedent has died; (2) that the
death was the result of a wrongful act, neglect, or default; (3)
the identity of the person or entity who owed the decedent a duty
to act with due care and who may have engaged in conduct that
breached that duty; and (4) that the wrongful act, neglect or
default of that person or entity has a causal relation to the
decedent's death." Syl. Pt. 8, Bradshaw, 558 S.E.2d at 683.
Following the explosion in the No. 9 mine, the estates of the
miners filed three separate civil actions that, by their nature,
belie any argument they were unaware that the "death[s] [of the

decedents] were the result of a wrongful act, neglect, or default."

Id.

In 1970, the miners' estates simultaneously filed two civil actions, the first in federal court in the Western District of Pennsylvania (dkt. no. 4-3), and the second in state court in Marion County, West Virginia. In both actions, Plaintiffs accused CCC of "negligence and willful misconduct in the operation and maintenance of the Mine including violations of mine safety legislation and regulations and that the explosion resulted therefrom," ultimately causing the miners' deaths. See Kaznoski v. Consolidation Coal Co., 368 F. Supp. 1022 (W.D. Pa. 1974). Following four years of discovery, the federal court dismissed the claims against CCC on the merits. Id. at 1024. The state court also dismissed with prejudice the claims against CCC, in part in 1974, and fully in 1975. (Dkt. No. 4-3; Dkt. No. 4-4).

Several of the Plaintiffs then filed a third lawsuit in 1978, alleging that CCC had breached its settlement agreement by ceasing recovery efforts and sealing the No. 9 mine. Although this suit did not involve litigation over the wrongful deaths of the miners, the complaint outlines what the Plaintiffs believed caused their deaths. Specifically, it alleged that CCC had "obstruct[ed] the

MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]

Plaintiffs from prosecuting their rights and claims against [CCC] for its liability in causing said explosion or explosions, and the consequences resulting therefrom." (Dkt. No. 4-6 at 5). It further alleged that CCC "did unlawfully and fraudulently conceal and cause to be concealed, from the appropriate State and Federal authorities and from the Plaintiffs, and from the public at large, the cause or causes of the aforesaid explosion or explosions." Id. at 5-6 (emphasis added). Finally, the complaint listed multiple ways in which CCC had allegedly concealed relevant information. Id. at 6-7.

Clearly, as early as 1970, Plaintiffs were aware of a cause of action for wrongful death against CCC. Any argument that they were unaware that someone had bypassed the FEMCO alarm until 2008, when they discovered Layne's letter, would not alter the outcome; the Layne letter disclosed information relevant to that issue fully six years before this suit was filed.

## C.  Deliberate Intent

In the R&R, Magistrate Judge Kaull concluded that, in addition to a claim for wrongful death, the amended complaint asserted statutory and common law claims for deliberate intent.[8] In their

---

[8]CCC's motion to dismiss never argued that the complaint presented deliberate intent claims, but contended that Plaintiffs' claims were solely for wrongful death.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]**
**AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

objections, the Plaintiffs deny that their amended complaint includes any claims of deliberate intent, and insist that their only claim is for fraud. (Dkt. No. 106 at 5; Dkt. No. 152 at 14). Although the Court has concluded that the Plaintiffs' claims do not sound in fraud, it does agree that they have not pleaded a deliberate intent claim in this case.

Under West Virginia's deliberate intent statute, an employee may collect damages beyond those provided under the state's workers' compensation system:

> . . . If death results to any employee from the deliberate intention of his or her <u>employer</u> to produce the injury or death, the representative of the estate may recover under this chapter and bring a cause of action, pursuant to section six, article seven of chapter fifty-five of this code, against the <u>employer</u>, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable in a claim for benefits under this chapter. To recover under this section, the employee, the employee's representative or dependent, as defined under this chapter, must, unless good cause is shown, have filed a claim for benefits under this chapter[9].

_____

[9]There is no allegation in the case that the Plaintiffs filed a claim for workers' compensation benefits, which, according to § 23-4-2(c), would be a prerequisite to any deliberate intent recovery.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

W. Va. Code § 23-4-2(c) (emphasis added); <u>see also</u> <u>Reynolds v.</u>
<u>Consol of Kentucky, Inc.</u>, 2010 WL 3522130, at *4-5 (S.D.W.Va. 2010)
(outlining elements of a deliberate intent action).

Relevant to any deliberate intent claim is the fact that
neither Sacchetti nor CCC employed the Plaintiffs' decedents — a
fact the Plaintiffs acknowledge in their objections. <u>See</u> Dkt. No.
152 at 13 ("Given that neither Consolidation Coal Company nor
Leonard Sacchetti were the plaintiffs' employer, or acting under
the direction of the plaintiffs' employer, neither fall within the
ambit of the 'deliberate intent' scheme.").

Both the complaint and the proposed amended complaint allege
that the miners who died in the No. 9 mine were employed by
Mountaineer Coal Company, and that Plaintiffs were deprived of the
"right to file a common law deliberate intention [sic] against
their employer, Mountaineer Coal Company." (Dkt. No. 1-19 at 22;
Dkt. No. 64-1 at 18). Furthermore, "[t]he law presumes that two
separately incorporated businesses are separate entities and that
corporations are separate from their shareholders." <u>Southern Elec.</u>
<u>Supply Co. v. Raleigh Cty. Nat. Bank</u>, 320 S.E.2d 515, 523 (W.Va.
1984).

Accordingly, the Plaintiffs cannot pursue a deliberate intent action; and, even if they could, pursuant to Fed. R. Civ. P. 12(b)(6), they would be subject to dismissal because neither Sacchetti nor CCC employed the miners. For that reason, the Court **REJECTS** that portion of the R&R construing the Plaintiffs' claims as alleging deliberate intent. Nevertheless, the Court concurs with the recommendation in the R&R that any potential claims of deliberate intent would have been barred by the statute of limitations.

**D.**  **Fraud and Fraudulent Concealment**

The Plaintiffs object to the recommendation in the R&R that the Court reject the argument that their claim is one for fraud or, more accurately, fraudulent concealment. See Dkt. No. 64-1 at 15.

*1.*  *Fraud and Fraudulent Concealment Actions*

There are two identically named yet legally distinct concepts at play when considering fraudulent concealment actions. As discussed earlier, fraudulent concealment is a tolling doctrine recognized in West Virginia law; it also may be a cause of action that in some circumstances stands alone. When addressing fraudulent concealment as a cause of action, both parties have relied on precedent relating to fraudulent concealment as a tolling doctrine.

36

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

Although they may share similar traits, these doctrines are legally distinct. While West Virginia has significant case law discussing the tolling doctrine of fraudulent concealment, significantly less case law exists discussing what constitutes a cause of action for fraudulent concealment in West Virginia.

It must be remembered that, at its core, fraudulent concealment is a form of fraud. To succeed on a fraud claim, a plaintiff in West Virginia must prove the following elements: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." Trafalgar House Const., Inc. v. ZMM, Inc., 567 S.E.2d 294, 300 (W.Va. 2002) (quoting Syl. Pt. 1, Lengyel v. Lint, 280 S.E.2d 66 (W.Va. 1981)); see also Kessel v. Leavitt, 511 S.E.2d 720, 752 (W.Va. 1998). Fraud by concealment, however, "involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." Quicken Loans, Inc. v. Brown, 737 S.E.2d 640, 654 (W.Va. 2012) (quoting Trafalgar, 567 S.E.2d at 300). Notably, fraudulent concealment requires "active concealment of information

from a party with the intent to thwart that party's effort to conduct an investigation." <u>Kessel</u>, 511 S.E.2d at 753.

A serious problem with the Plaintiffs' claim of fraudulent concealment is that it is unclear whether such a cause of action exists in West Virginia where a wrongful death is involved. The limited circumstances in which West Virginia has recognized fraudulent concealment as a cause of action do not include wrongful deaths cases. Virtually every West Virginia case alleging fraudulent concealment as a cause of action has involved a commercial transaction, the majority of which are real estate sales involving failure to disclose latent defects.[10] There appears to be only one case of fraudulent concealment that does not involve a business or commercial transaction. That case is distinguishable from the case at bar, however, and is unavailing to the Plaintiffs.

In <u>Kessel v. Leavitt</u>, the Supreme Court of Appeals concluded that the defendants had fraudulently concealed information from a

---

[10] <u>See, e.g.</u>, <u>Kassab v. Ellis</u>, 2013 WL 6152416 (W.Va. 2013) (failure to disclose latent property defects); <u>Loque v. Flanagan</u>, 584 S.E.2d 186 (W.Va. 2003) (home vendor's failure to disclose latent construction defects); <u>Trafalgar House Const., Inc. v. ZMM, Inc.</u>, 567 S.E.2d 294 (W.Va. 2002) (same); <u>Darrisaw v. Old Colony Realty Co.</u>, 501 S.E.2d 187 (W.Va. 1997) (same); <u>Teter v. Old Colony</u>, 441 S.E.2d 728 (W.Va. 1994) (same); <u>Thacker v. Tyree</u>, 297 S.E.2d 885 (W.Va. 1982) (same).

father regarding the status and whereabouts of his child and the child's mother. 511 S.E.2d 720, 755-56. The defendants' misinformation and omissions had prevented the father from establishing a relationship with his child or preventing the child's eventual adoption by a Canadian couple. Id. at 735-38.

Notably, the defendants' fraudulent concealment had not prevented the plaintiff from bringing a different cause of action, but was relevant to the loss of his ability to "demonstrate his commitment to the responsibilities of parenthood so as to permit him to establish and maintain a relationship with [the child]," which is not a cause of action in its own right. Id. at 751.

Given that virtually every case in West Virginia in which fraudulent concealment presented as a cause of action involved contracts, real estate sales, or other business transactions, Kessel stands alone. Indeed, the court noted the unusual nature of Kessel's claim:

> [W]e now look to [Kessel's] specific cause of action: whether the defendants are liable to [Kessel] for their alleged fraudulent concealment of information in response to inquiries about the post-birth whereabouts of his son. We observe that not only is this asserted cause of action novel to the jurisprudence of this State, but it appears that the courts of no other states have addressed directly whether such a claim may be maintained.

Kessel, 511 S.E.2d at 754. The Court, therefore, adopts Magistrate Judge Kaull's recommendation that the Plaintiffs have not pleaded a cause of action for fraudulent concealment, but rather have asserted the fraudulent concealment doctrine to toll their real claim for wrongful death.

### 2.   Statute of Limitations

Even if Plaintiffs had stated a valid claim of fraudulent concealment, the two-year statute of limitation barred the claim as to CCC. See W. Va. Code § 55-2-12 (2016). The statute of limitations begins in a fraud action when:

> the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Dunn v. Rockwell, 689 S.E.2d at 255, 268 (W.Va. 2009)(quoting Syl. Pt.4, Gaither, 487 S.E.2d at 909). Generally, a cause of action is discovered, and the statute of limitations runs, "at the same time that the actionable conduct occurs." Id. Discovery of the action is an objective test, focusing on "whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." Id.

The relevant question here is when did the Plaintiffs discover the alleged fraudulent concealment by CCC. They contend that CCC has concealed the truth since the time of the explosion. But the record is clear that the Plaintiffs discovered their cause of action for fraudulent concealment much earlier than two years prior to the filing of this law suit.

Multiple incidents in the past triggered the running the statute of limitations. In 1980, MSHA filed a report concluding, among other things, that the FEMCO alarm controlling the Mod's Run fan was inoperable at the time of the explosion, and that the fan alarms had been blocked out in the past. (Dkt. No. 4-2 at 4, 5). This report would have put the Plaintiffs on notice that CCC had not disclosed all the information related to the cause of the explosion, at which point they could have filed a claim.

Layne's letter, which the Plaintiffs acknowledge discovering in 2008 (dkt. no. 1-19 at 13), put them on notice that an electrician working at the Mine had informed Layne that someone had bypassed the FEMCO alarm:

> On Sept. 5, 1970, 12am-8am shift, the Mods Run substation was energized for the first time since the explosion of Nov. 20, 1968. The electrician (name withheld by request) reported that while energizing the substation he found evidence to indicate that the Femco fan alarm system for Mods Run fan had been rendered inoperable before the

> explosion. The fan alarm system had been bridged with
> jumper wires; therefore when the fan would stop or slow
> down, there was no way of anyone knowing about it because
> the alarm signal was bypassed. This information was
> reported to me Sept 15, 1970.

Id. Upon discovering this letter, the Plaintiffs were aware that

CCC had not disclosed all of the facts surrounding the explosion,

including that the fan had been physically bypassed, or that

certain individuals might have been involved in bypassing or re-

energizing the fan.

Tellingly, Plaintiffs' complaint alleges that CCC "failed to

disclose . . . . the disabling of the FEMCO alarm system for the

Mod's Run fan by defendants," and that "all comments and statements

made by defendants have been communicated as half-truths so as to

deprive the plaintiffs of their ability to know who was responsible

for the failure of the FEMCO alarm to operate." (Dkt. No. 1-19 at

19). The Plaintiffs either knew or should have known these facts no

later than 2008. They have not alleged any change of circumstances

between the time they discovered the Layne letter and the filing of

the instant lawsuit, except for the discovery of the identity of

Sacchetti as the unnamed electrician, and the allegation that he

and Kovarbasich had disabled the FEMCO alarm.

Neither of those facts, however, was necessary for the Plaintiffs to assert a claim of fraudulent concealment against CCC. Upon discovery of the Layne letter in 2008, they were aware that someone had disabled the FEMCO alarm and that CCC had never disclosed such information. The specific identity of the person who had disabled the alarm was irrelevant to a claim of fraudulent concealment, which the Plaintiffs could have asserted once they knew CCC had not disclosed that the FEMCO alarm had been bypassed.

To sum up, the Plaintiffs knew in 2008 "(1) that [they] ha[d] been injured, (2) that [CCC] owed them a duty to act with due care, and [] may have engaged in conduct that breached that duty [by failing to disclose the disabling of the FEMCO alarm], and (3) that the conduct of [CCC] ha[d] a causal relation to the injury." Dunn, 689 S.E.2d at 265. Thus, at the very latest, the discovery of Layne's letter in 2008 triggered the running of the statute of limitations.[11]

---

[11]It should also be noted that, as discussed earlier, in 1978 several Plaintiffs had alleged that CCC "did unlawfully and fraudulently conceal and cause to be concealed, from the appropriate State and Federal authorities and from the Plaintiffs, and from the public at large, the cause or causes of the aforesaid explosion or explosions." (Dkt. No. 4-6 at 5-6 (emphasis added)).

Consequently, even if the Court construed their claim as a cause of action for fraudulent concealment rather than wrongful death, Plaintiffs were on notice of any alleged fraudulent concealment no later than 2008, approximately six years before they filed this action, and likely much earlier. Their claim, therefore, is barred by the statute of limitations.

### *3.   Failure to State a Claim as to Sacchetti*

The Court also notes that, had the proposed amended complaint asserted a claim for fraudulent concealment against Sacchetti, it would have failed to state a valid claim. As Magistrate Judge Kaull recognized in the R&R, the Plaintiffs have cited no case law or statute holding that a "mine electrician has a duty to disclose information regarding his own misconduct to potential litigants and open himself up to civil liability and possible criminal charges (and the [Magistrate] Court's search has turned up no such case or statutory law)." (Dkt. No. 99 at 25). Nor has this Court found a case or statute establishing such a duty. Consequently, because Sacchetti owed no duty to the Plaintiffs to disclose his alleged involvement in disabling the FEMCO alarm on the Mod's Run fan, any claim of fraudulent concealment against him must fail. See Quicken Loans, 737 S.E.2d at 654 (noting that fraudulent concealment

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

"involves the concealment of facts by one with knowledge or the means of knowledge, and a <u>duty to disclose</u>, coupled with an intention to mislead or defraud" (emphasis added)).

### IV. CONCLUSION

In summary, the Court concludes that:

1) The claims brought in the Plaintiffs' complaint and proposed amended complaint sound in wrongful death;

2) The discovery rule and fraudulent concealment doctrine did not apply to wrongful death actions in 1968;

3) The subsequent adoptions of the discovery rule and fraudulent concealment doctrine as to wrongful death actions are not retroactively applicable to this case;

4) The Plaintiffs have not asserted a deliberate intent claim and, even if they had, such would be barred by the statute of limitations;

5) Although West Virginia has recognized fraudulent concealment as a stand alone cause of action in limited circumstances, it is not applicable in this case;

6) Even if Plaintiffs had asserted a valid fraudulent concealment cause of action against CCC, it would have been barred by the statute of limitations; and

7) No fraudulent concealment cause of action would apply to Sacchetti, who owed the Plaintiffs no duty to disclose.

Consequently, for the reasons discussed, the Court:

• **ADOPTS** the R&R in its entirety (dkt. no. 99), except for its recommendation that the Court find that the Plaintiffs' complaint alleges a deliberate intent claim;

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 99]
AND GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 4]**

- **DENIES** the Plaintiffs' motion to amend the complaint (dkt. no. 64) to add Sacchetti as a defendant because such amendment would be futile;

- **DENIES as MOOT** Consolidation Coal Company's motion to strike the amended complaint (dkt. no. 68);

- **GRANTS** Consolidation Coal Company's motion to dismiss (dkt. no. 4); and

- **DISMISSES WITH PREJUDICE** all claims in this case against Consolidation Coal Company.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record and to enter a separate judgment order.

DATED: March 31, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE